## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVAYA INC, | § | |
| Plaintiff, | § § § | |
| | § | |
| v. | § | C.A. No. 1:12-cv-00191-LPS |
| | § | |
| SNMP RESEARCH INTERNATIONAL, INC., | § § § | |
| Defendant. | § § | |

## DEFENDANT'S MOTION TO DISMISS OR TRANSFER

Dated: March 9, 2012

THORP REED & ARMSTRONG, LLP
Thomas H. Kovach (3964)
Karen M. Grivner (4372)
Gregory W. Hauswirth (5679)
824 Market Street, Suite 710
Wilmington, DE  19801
Telephone:  (302) 250-4750
Facsimile:  (302) 421-9439
Email:  ghauswirth@thorpreed.com
Email:  tkovach@thorpreed.com

Of Counsel:
  James C. Pistorino
  PERKINS COIE LLP
  3150 Porter Drive
  Palo Alto, CA  94304-1212
  Telephone:  (650) 838-4300
  Facsimile:  (650) 838-4350
  Email:  JPistorino@perkinscoie.com

  John L. Wood
  EGERTON MCAFEE ARMISTEAD & DAVIS, P.C.
  900 S. Gay Street
  Knoxville, TN  37902
  Telephone:  (865) 546-0500
  Facsimile:  (865) 525-5293
  Email:  jwood@emlaw.com
  *Attorneys for Defendant SNMP*
  *Research International, Inc*

{D0001045}

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE..................................................................................... 1

II.   SUMMARY OF THE ARGUMENT ............................................................... 1

III.  FACTUAL BACKGROUND............................................................................ 2

IV.   DISCUSSION.................................................................................................... 4

      A.    SNMPRI Is Not Subject To Personal Jurisdiction In Delaware ............................ 4

            1.    Personal Jurisdiction Requires Actual Facts, Not Mere Allegations.......... 4

            2.    Delaware's Long-Arm Statute .................................................................. 5

            3.    General Jurisdiction Requires Actions By SNMPRI In Delaware ............. 6

            4.    Specific Jurisdiction Requires A Statutory Basis ...................................... 6

      B.    Improper Venue ................................................................................................... 9

      C.    If This Case Is Not Dismissed, It Should Be Transferred To The Eastern
            District Of Tennessee.......................................................................................... 9

            1.    This Case Could Have Been Brought In The Eastern District of
                  Tennessee ............................................................................................... 10

            2.    The Third Circuit Factors Favor Transfer................................................ 10

      D.    Private Interests ................................................................................................. 11

            1.    Defendant's Preference........................................................................... 11

            2.    Where The Claims Arose......................................................................... 11

            3.    Plaintiff's Preference .............................................................................. 11

            4.    The Convenience Of The Parties As Indicated By Their Relative
                  Size And Financial Condition.................................................................. 12

            5.    Convenience Of The Witnesses............................................................... 12

            6.    Location Of The Documents.................................................................... 13

      E.    Public Interests.................................................................................................. 14

|      | 1. | Familiarity Of The Trial Judge With Applicable State Law...................... 14 |
|      | 2. | Practical Considerations That Could Make Trial Easy, Expeditious, And Inexpensive ...................................................................................... 14 |
|      | 3. | Enforceability Of The Judgment............................................................... 14 |
|      | 4. | Local Interest In Deciding Local Controversies At Home ....................... 15 |
|      | 5. | Relative Administrative Difficulty Resulting From Court Congestion ............................................................................................. 15 |
|      | 6. | Public Policies Of The Fora..................................................................... 16 |
| IV.  | CONCLUSION................................................................................................. 17 |

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998) ........................................................................... 12, 13

*Boston Sci. Corp. v. Wall Cardiovascular Tech., LLC*,
    647 F. Supp. 2d 358 (D. Del. 2009) ............................................................................... 6

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ......................................................................................................... 6

*Downing v. Globe Direct LLC*,
    2010 WL 2560054 (D. Del. 2010) ........................................................................... 11, 12

*Eagle Traffic Control v. James Julian, Inc.*,
    933 F. Supp. 1251 (E.D. Pa. 1996) .............................................................................. 11

*Eurofins Pharma US Holdings v. Bioalliance Pharma SA*,
    623 F.3d 147 (3rd Cir. 2010) .......................................................................................... 6

*Flight Solutions, Inc. v. Club Air, Inc.*,
    2010 WL 276094 (M.D. Tenn. 2010) ........................................................................... 15

*IMO Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3rd Cir. 1998) .......................................................................................... 3

*Intellectual Ventures I LLC v. Altera Corp.*,
    2012 WL 297720 (D. Del. Jan. 24, 2012) .................................................................... 15

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3rd Cir. 1995) ............................................................................... 10, 15, 16

*Kehm Oil Co. v. Texaco, Inc.*,
    537 F.3d 290 (3rd Cir. 2008) .......................................................................................... 5

*Lafferty v. St. Riel*,
    495 F.3d 72 (3rd Cir. 2007) ............................................................................................ 9

*Marvell Int'l Ltd. v. Link_A_Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011) ............................................................................... 11, 16

*Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*,
    2009 WL 5184350 (D. Del 2009) ............................................................................... 5, 6

*Sprint Nextel Corp. v. iPCS, Inc.*,
    2008 WL 2737409 (Del. Ch. 2008) ............................................................................... 7

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
    735 F.2d 61 (3rd Cir. 1984) ............................................................................................. 4

*TriStrata Tech., Inc. v. Neoteric Cosmetics, Inc.*,
    961 F. Supp. 686 (D. Del. 1997)..................................................................................... 5

**Statutes**

28 U.S.C. § 1391(b) ....................................................................................................... 9

28 U.S.C. § 1391(c) ....................................................................................................... 9

28 U.S.C. § 1404 ............................................................................................................ 9

28 U.S.C. § 1404(a) ....................................................................................................... 1

28 U.S.C. § 1404(b) ..................................................................................................... 10

28 U.S.C. § 1406 ............................................................................................................ 9

28 U.S.C. § 1406(a) .............................................................................................. 1, 9, 10

28 U.S.C. § 1631.................................................................................................... 1, 9, 10

Del. Code Ann. Title 10, § 3104(c) (2010)........................................................... 4, 5, 6

**Regulations and Rules**

Federal Rules of Civil Procedure 12(b) .......................................................................... 1

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Defendant SNMP Research International, Inc. ("SNMPRI") respectfully moves the Court to dismiss this action for lack of personal jurisdiction and improper venue. In the alternative, SNMPRI requests that the Court transfer this case to the Eastern District of Tennessee pursuant to 28 U.S.C. §§ 1406(a) and 1631, or § 1404(a).

## I.   NATURE AND STAGE

Plaintiff Avaya filed a Complaint on February 14, 2012 in Federal District Court for the District of Delaware, alleging, inter alia, breach of contract by Defendant SNMPRI. The allegations of the Complaint relate to a contract between SNMPRI and AT&T (out of Colorado) that specifies Tennessee law. For the following reasons, this matter should be dismissed or, in the alternative, transferred to the Eastern District of Tennessee. In addition, Defendant SNMPRI is filing a Motion to Dismiss and/or Strike under Fed. R. Civ. P. 12(b)(6) and 12(f) contemporaneously herewith. The motions are separate due to the distinct nature of the legal arguments.

## II.   SUMMARY OF THE ARGUMENT

1.   This case should be dismissed because this Court lacks personal jurisdiction over Defendant SNMPRI, and for that same reason venue is improper. SNMPRI is not incorporated or registered to do business in Delaware and has no bank accounts, real estate, or subsidiaries in Delaware, and does not advertise in Delaware. Indeed, the only contact between SNMPRI and this District in the last five years appears to be:

- SNMPRI's status as a claimant in a bankruptcy pending in this District (the Nortel Networks action), which is dictated by the presence of the bankruptcy proceeding in this District.

- A single sale of $1,500 for a license to SNMPRI software to a Delaware customer in 2008.

This case does not arise from either of those contacts and none of the acts giving rise to the alleged causes of action occurred in this District. In short, this Court lacks personal jurisdiction over SNMPRI.

2.    In the alternative, SNMPRI respectfully requests that this case be transferred to the Eastern District of Tennessee, where the action may be more conveniently tried. The public and private interest factors clearly favor transfer, including the fact that one of the allegedly relevant contracts specifies Tennessee law which the Tennessee court is more familiar with.

## III.    FACTUAL BACKGROUND

Defendant SNMPRI is a Tennessee corporation with its principal place of business in Knoxville, Tennessee.  (*See* Declaration of Mary Case ("Case Decl."), filed concurrently herewith, ¶ 2.)  SNMPRI is a private corporation, has less than 10 employees, and had relatively low revenue in 2011.  (*Id.* at ¶¶ 2, 4.)  SNMPRI is a software company that provides software used in computer communication and network management.  (*Id.* at ¶ 3.)  SNMPRI's software is produced at its Knoxville headquarters where all those with relevant knowledge of the development of the code are located.  (*Id.* at ¶¶ 11, 12.)

Over the past five years, SNMPRI engaged in only one transaction in which it sold its products to a Delaware-based customer.  Specifically, SNMPRI sold one set of licenses for one software product named "CIAgent" in a single transaction in December of 2008 to one customer in Delaware in a single transaction for a total price of $1,500.  (Case Decl. ¶ 15.)  SNMPRI does not solicit business in Delaware and has no place of business or employees in Delaware.  (*Id.* at ¶ 17.)  SNMPRI is not registered to do business in Delaware and has no registered agent for

service of process in Delaware. (*Id.*) SNMPRI neither owns nor controls any subsidiaries in Delaware and does not advertise in Delaware. (*Id.*) SNMPRI has no bank account, address, or phone number in Delaware. (*Id.*) SNMPRI is unaware of any employee ever traveling to Delaware on behalf of SNMPRI. (*Id.* at ¶ 18.) SNMPRI has no relevant documents or witnesses in Delaware. (*Id.* at ¶ 17.) SNMPRI is a claimant in the bankruptcy proceeding pending in this District involving Nortel Networks, Inc. (*Id.* at ¶ 19.) Other than the Nortel bankruptcy proceeding, SNMPRI has never been a party to any state or federal litigation in this District. (*Id.* at ¶ 20.)

The allegations of the Complaint relate to a contract between SNMPRI and AT&T (out of Colorado) that specifies Tennessee law and provides that it may not be altered or amended except in a writing signed by both parties. (Complaint filed as Dkt. No. 2 ("Compl.") ¶ 8, Ex. A ¶¶ 24(a), 32.) That contract was subsequently assigned to Plaintiff Avaya, Inc. Nevertheless, the Complaint includes a cause of action related to alleged oral agreements made in Tennessee modifying the SNMPRI/AT&T/Avaya contract. (Compl. ¶¶ 21-27.) The allegations of the Complaint also relate to notices of breach and termination of license sent by SNMPRI from Tennessee to Avaya in New Jersey. (Compl. ¶¶ 18-20, 31-32; Case Decl. ¶ 24.)

Plaintiff Avaya is incorporated in Delaware, but its principal place of business and headquarters are in New Jersey, and it is registered to do business in Tennessee. (Compl. ¶ 1; Declaration of James C. Pistorino ("Pistorino Decl."), filed concurrently herewith, ¶ 2, Ex. A.) Avaya is a multinational corporation with more than $8,500,000,000 in total assets, yearly revenue of more than $5,500,000,000, and 18,588 employees. (Pistorino Decl. ¶ 3, Ex. B.) Defendant is not aware of any Avaya documents or witnesses that may be relevant to this case are located in this District.

## IV.    DISCUSSION

**A.    SNMPRI Is Not Subject To Personal Jurisdiction In Delaware**

### 1.    Personal Jurisdiction Requires Actual Facts, Not Mere Allegations

Avaya's Complaint must be dismissed because SNMPRI is not subject to personal jurisdiction in Delaware.  While a court must accept a plaintiff's allegation as true for purposes of a motion to dismiss, "the plaintiff bears the burden of proving that personal jurisdiction is proper." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3rd Cir. 1998).  "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3rd Cir. 1984).  "Once the motion is made, plaintiff must respond with actual proofs, not mere allegations," and the plaintiff "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Id.*

Avaya makes boilerplate allegations that SNMPRI "regularly transacts business in the State of Delaware." (Compl. ¶ 6.)  No facts are provided to support this claim and Avaya does not even make clear whether it is alleging general or specific personal jurisdiction.  Nevertheless, both forms of personal jurisdiction fail as a matter of law.  While Avaya alleges that SNMPRI "avails itself of the benefits of this judicial district including the jurisdiction of the courts," the only fact offered is that SNMPRI has participated as a claimant in the ongoing bankruptcy of Nortel Networks that is venued in this District. (Compl. ¶ 16.)  As set forth fully below, the mere act of making a claim in a bankruptcy proceeding in this District does not subject SNMPRI to personal jurisdiction in this matter.

## 2.      Delaware's Long-Arm Statute

Delaware's long-arm statute provides that "a court may exercise personal jurisdiction over any nonresident" for "a cause of action … arising from any of the acts enumerated in this section." Del. Code Ann. Title 10, § 3104(c) (2010).  The Act lists six categories of activities, only four of which are remotely relevant.[1]  Those are:

1.     Transacts any business or performs any character of work or service in this State;

2.     Contracts to supply services or things in this State;

3.     Causes tortuous injury in the State by an act or omission in this State; [or]

4.     Causes tortuous injury in the State or outside of the State by an act or omission outside the State of the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

Federal courts have recognized two types of personal jurisdiction:  general and specific jurisdiction.  "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3rd Cir. 2008).  "Specific jurisdiction exists when the claim arises from or relates to conduct purposefully directed at the forum state." *Id.*  Under the Delaware long-arm statute, "subsections 3104(c)(1), (2) and (3) are specific jurisdiction provisions, where there must be a nexus between the cause of action and the conduct of the defendant as a basis for jurisdiction.  Subsection (c)(4) is a general jurisdiction provision, which requires a greater extent of contacts, but applies when the claim is unrelated to forum contacts." *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, 2009 WL 5184350, at *3 (D. Del 2009).

---

[1]  Del. Code Ann., Title 10, §3104(c)(5) and (6) relate to real property and insurance.

### 3.    General Jurisdiction Requires Actions By SNMPRI In Delaware

It is unclear whether Avaya is asserting general jurisdiction when Avaya offers that SNMPRI "regularly transacts business in the State of Delaware." Again, no facts are offered to support this allegation. To the extent that Avaya is asserting general jurisdiction, this Court has previously held: "While seemingly broad in its language, the standard for general jurisdiction is high in practice and not often met." *TriStrata Tech., Inc. v. Neoteric Cosmetics, Inc.*, 961 F. Supp. 686, 691 (D. Del. 1997). SNMPRI's solitary sale of a license to SNMPRI software in Delaware for $1,500 in 2008 is by no means systematic or continuous. (Case Decl. ¶¶ 14, 15.) Of its total revenue for 2008 (*id.* at ¶ 16), this lone sale represents approximately 0.015% of that number. SNMPRI simply lacks the systematic and continuous contacts that would be necessary to support a claim of general jurisdiction, and Avaya has not and cannot make such a showing.

### 4.    Specific Jurisdiction Requires A Statutory Basis

Delaware's long-arm statute requires the actions by a defendant giving rise to the cause of action to occur in Delaware. Specifically, section 3104(c) requires that a defendant (1) "transacts any business or performs any character of work or service in the State"; (2) "contracts to supply services or things in this State"; or (3) "causes injury in the State by an act or omission in this State." Del. Code Ann. Title 10, § 3104(c) (emphasis added). Transacting business, even with a Delaware corporation, "outside of Delaware does not satisfy Delaware's long-arm statute." *See, e.g.*, *Boston Sci. Corp. v. Wall Cardiovascular Tech., LLC*, 647 F. Supp. 2d 358, 366 (D. Del. 2009); *Eurofins Pharma US Holdings v. Bioalliance Pharma SA*, 623 F.3d 147, 157 (3rd Cir. 2010) (affirming dismissal for lack of personal jurisdiction where there was "no indication that [the defendant] committed any act or omission in Delaware"). Even if contracting with a Delaware corporation satisfied Delaware's long-arm statute, the statute as so construed

would fail the Supreme Court's minimum contacts test for specific jurisdiction. As the Supreme Court put it, "[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).

SNMPRI's two contacts with Delaware are irrelevant to Avaya's suit because there is no nexus between Avaya's causes of action and those contacts. *See Quantum Loyalty*, 2009 WL 5184350 at *3 ("there must be a nexus between the cause of action and the conduct of the defendant as a basis for jurisdiction"). Avaya's complaint simply has nothing to do with SNMPRI's lone Delaware sale.

The contact in the Nortel bankruptcy does not satisfy Delaware's long-arm statute either because the present case does not arise from SNMPRI's claims there. Indeed, there is no nexus between Avaya's suit and the Nortel bankruptcy. Where a plaintiff bases personal jurisdiction on a defendant's use of courts in the jurisdiction, the plaintiff must show that the defendant's "acts within the jurisdiction were critical steps in the chain of events resulting in the cause of action before the court." *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *10 (Del. Ch. 2008). In *Sprint Nextel*, the defendant had previously filed a suit in Delaware that did not give rise to a second suit for purposes of personal jurisdiction because each suit was based on two separate transactions that presented "separate factual circumstances." *Id.* Even though the second suit had "the same contracts, same provisions, same parties, and the 'same character of conduct,'" the two suits were based on two distinct transactions. *Id.* "Even if [the first suit] never happened, the [second transaction] presumably still would have occurred and given rise to" the second suit. *Id.*

Like the transactions in *Sprint Nextel*, the transaction at issue in the present case is based on a separate transaction from the facts and circumstances forming the basis of SNMPRI's claim in the Nortel action. The contract at issue in the present matter governs the relationship between SNMPRI and Avaya with respect to products and software defined as Red Products in Avaya's complaint ("Red License"). (Compl. ¶¶ 8-12.) These Red Products are products Avaya sells that contain SNMPRI's copyrighted software, which Avaya claims it licensed from SNMPRI by entering into the Red License. (*Id.*) Avaya claims SNMPRI breached this Red License (Compl. ¶¶ 48-52), and that SNMPRI's conduct with respect to Avaya's attempt to cure its breach of the Red License breached the implied covenant of good faith and fair dealing. (Compl. ¶¶ 53-59.)

SNMPRI's claims in the Nortel bankruptcy have to do with software Nortel transferred to Avaya in violation of Nortel's license agreement with SNMPRI. (Compl. ¶¶ 13-17.) In the Complaint, Avaya defines Blue Software and Products as its products that contain SNMPRI software obtained through this invalid transaction with Nortel (Compl. ¶ 13) and alleges that SNMPRI and Avaya entered into an "Accession Agreement" with respect to that Blue Software. (Compl. ¶ 14.) While the Complaint alleges facts related to the Blue Software and Products, none of the causes of action or claims for relief of the Complaint are based upon them.

Instead, all of the causes of action relate to the Red License and Products. Both the claims of breach of contract and breach of the implied covenant of good faith and fair dealing stem from the Red License, and all conduct related to that license took place outside of Delaware. (Case Decl. ¶¶ 21-23.) As such, the present case did not arise from SNMPRI's claims in the Nortel bankruptcy and SNMPRI is not subject to the specific personal jurisdiction of this Court.

Accordingly, this Court lacks both general and specific personal jurisdiction over SNMPRI and this case should be dismissed.

**B.      Improper Venue**

The case should also be dismissed for improper venue.  This District is the proper venue only if it is:

(1)      a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)      a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)      if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Venue is not proper over SNMPRI because it is not a resident of the forum.  For purposes of residency in a venue analysis, a corporation is a resident if the court would have personal jurisdiction over the corporation.  28 U.S.C. § 1391(c).  Here, the Court does not have personal jurisdiction over SNMPRI, as explained above.  Furthermore, venue is not proper because the events giving rise to the claim did not occur in this District as previously stated and the action may properly be brought in Tennessee as discussed above.  As such, venue is improper.

**C.      If This Case Is Not Dismissed, It Should Be Transferred To The Eastern District Of Tennessee**

In the alternative, if the Court decides not to dismiss the case outright, SNMPRI asks the Court to transfer this case to the Eastern District of Tennessee pursuant to 28 U.S.C. §§ 1406 and 1631, or § 1404.

For transfers, "[s]ection 1406(a) comes into play where plaintiffs file suit in an improper forum."  *Lafferty v. St. Riel*, 495 F.3d 72, 76-77 (3rd Cir. 2007).  Section 1631 similarly allows a

transfer when personal jurisdiction is lacking.  On the other hand, "[s]ection 1404(a) transfers …
presuppose that the court has jurisdiction and that the case has been brought in the correct
forum."  *Lafferty*, 495 F.3d at 76-77.  As discussed above, SNMPRI is not subject to personal
jurisdiction in Delaware and venue is not proper in Delaware.  Therefore, sections 1406 and
1631 require that the Court "shall [either] dismiss, or if it be in the interest of justice, transfer."
*See also Lafferty*, 495 F.3d at 77.  However, even if venue and jurisdiction are proper, section
1404(a) allows that "[f]or the convenience of parties and witnesses, in the interest of justice, a
district court may transfer any civil action to any other district or division where it might have
been brought."

### 1.    This Case Could Have Been Brought In The Eastern District of Tennessee

A case can be transferred "to any other district or division where it might have been
brought."  28 U.S.C. §§ 1404(b), 1406(a); cf. § 1631 ("to any other such court in which the
action or appeal could have been brought at the time it was filed or noticed").  The Eastern
District of Tennessee had personal jurisdiction over SNMPRI at the time Avaya filed its
Complaint because SNMPRI is incorporated in Tennessee and its principal place of business is in
the Eastern District of Tennessee. (Case Decl. ¶ 2.)  Indeed, SNMPRI has already filed an action
in the Eastern District of Tennessee, which includes claims of copyright infringement and breach
of contract and that subsumes the causes of action alleged herein.

### 2.    The Third Circuit Factors Favor Transfer

The Third Circuit has set forth a variety of non-exhaustive factors to consider in
analyzing a transfer under 28 U.S.C. § 1404(a).  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879
(3rd Cir. 1995).  Here, the weight of the factors strongly supports transfer to the Eastern District
of Tennessee.

**D.    Private Interests**

   **1.    Defendant's Preference**

   SNMPRI prefers the Eastern District of Tennessee where SNMPRI is headquartered and all of SNMPRI's employees and documents are located. (Case Decl. ¶¶ 2, 12, 13.) Further, as explained above, SNMPRI does not believe that personal jurisdiction or venue are proper in Delaware. This factor weighs in favor of the Eastern District of Tennessee.

   **2.    Where The Claims Arose**

   While denied, Avaya's claims for breach of contract and the covenant of good faith and fair dealing arose, if anywhere, in Tennessee, not Delaware. Tennessee law governs the Red License and SNMPRI was in Tennessee when it entered the contract. (Compl. ¶ 8, Ex. A ¶ 32; Case Decl. ¶ 22.) The alleged oral agreement between Avaya and SNMPRI occurred when SNMPRI and Avaya met in Tennessee. (Compl. ¶ 21; Case Decl. ¶ 24.) SNMPRI's notice of termination, which forms the basis for SNMPRI's alleged breach, was drafted in and sent from Tennessee. (Case Decl. ¶ 24.) No part of the contract, its breach, or negotiations touched Delaware. (*Id.* at ¶ 23.) The fact that Avaya is incorporated in Delaware does not mean the claims arose in Delaware. *See Downing v. Globe Direct LLC*, 2010 WL 2560054, at *3-4 (D. Del. 2010) (transferring to defendant's home forum because the only connection to Delaware was that the defendant was a Delaware corporation and all operative facts occurred outside Delaware). This factor weighs in favor of transfer.

   **3.    Plaintiff's Preference**

   The fact that Avaya filed the Complaint in Delaware indicates that Avaya prefers Delaware. Although Plaintiff's choice of forum favors keeping the case in this forum, that choice is not dispositive. *Marvell Int'l Ltd. v. Link_A_Media Devices Corp.*, 662 F.3d 1221,

1223 (Fed. Cir. 2011). Indeed, as this Court has noted, the "plaintiff's choice is entitled to less

deference" where "the operative facts . . . occurred outside of Delaware." *Downing*, 2010 WL

2560054 at *3 (citing *Eagle Traffic Control v. James Julian, Inc.*, 933 F. Supp. 1251, 1259 (E.D.

Pa. 1996)). Thus, Avaya's preference is entitled to only slight weight.

### 4.   The Convenience Of The Parties As Indicated By Their Relative Size And Financial Condition

The relative size and financial condition of the parties favors transfer to the Eastern

District of Tennessee. SNMPRI is a small, privately held Tennessee corporation, with relatively

little revenue for 2011 and less than 10 employees all located in Tennessee. (Case Decl. ¶¶ 2, 4.)

By contrast, Avaya has 18,588 employees throughout the world, is registered to do business in

Tennessee, and has yearly revenue in excess of $5,500,000,000 (Pistorino Decl. ¶¶ 2, 3.)

Because it is a company of less than 10 persons, litigating this suit in Delaware – where neither

party has an office – will impact SNMPRI's few employees and, in turn, its operations much

more than it will impact Avaya to litigate in Tennessee. (*See* Case Decl ¶ 4.) Indeed, the impact

on Avaya will be slight. This factor favors transfer.

### 5.   Convenience Of The Witnesses

The convenience of the witnesses, even as limited to those fact witnesses that may be

unavailable for trial in Delaware, favors the Eastern District of Tennessee. The convenience of

"fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit . . .

have traditionally weighed quite heavily in the 'balance of convenience' analysis." *Affymetrix,*

*Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). As noted above, all of SNMPRI's

employees are located in Tennessee. Moreover, the causes of action of the Complaint are based

on an alleged oral agreement made in Tennessee between Avaya and SNMPRI. (Compl. ¶ 21;

Case Decl. ¶ 25.) Present at the meeting were Avaya personnel and Mary Case (President and

CEO of SNMPRI), Dr. Jeff Case (who is not an employee, officer, or director of SNMPRI), and SNMPRI's outside counsel, attorney John L. Wood. (Case Decl. ¶¶ 7, 26.) In the present case, even if SNMPRI is subject to personal jurisdiction in this Court, neither Dr. Case nor Mr. Wood are, and they are not subject to the subpoena power of this Court.[2] *See Downing*, 2010 WL 2560054 at *4; *Affymetix*, 28 F. Supp. at 208 (where non-party witnesses are located outside of Delaware "the Court cannot guarantee that they will appear at trial"). Accordingly, the only forum that has absolute subpoena power over both the parties and non-party witnesses is the Eastern District of Tennessee. This factor weighs in favor of transfer.

### 6.   Location Of The Documents

The documents relating to SNMPRI's software and the licenses and contracts related to that software and copyrights are in Tennessee. (Case Decl. ¶ 13.) SNMPRI's electronically accessible documents in Tennessee are relevant to balancing convenience and favor transfer. *See Affymetrix*, 28 F. Supp. 2d at 205. But to the extent Avaya seeks documents from Dr. Case and SNMP Research, Inc. who, as described above, are not parties in this suit, the Court would have no power to compel Dr. Case and SNMP Research, Inc. to appear in Delaware to authenticate those records. Given Avaya's allegations regarding Dr. Case's involvement in this matter (Compl. ¶¶ 33-39), Avaya will likely seek these documents. Accordingly, with respect to electronically accessible documents, and especially any documents in possession of Dr. Case and SNMP Research, Inc., this factor favors transfer.

---

[2]   Contrary to Avaya's allegations, Dr. Case did not found SNMPRI. (Case Decl. ¶ 5.) The Defendant in this case is SNMP Research International, Inc. which is authorized to bundle and license software developed by SNMP Research, Inc. (*Id.* at ¶ 3.) Although married to Mary Case, Dr. Case is not an employee, officer, or director of SNMPRI, and SNMPRI and SNMP Research Inc. have no common officers or directors. (*Id.* at ¶¶ 7, 8.)

**E.     Public Interests**

The public interests also favor transferring to the Eastern District of Tennessee.

**1.     Familiarity Of The Trial Judge With Applicable State Law**

As noted above, the Red License specifies that the license is governed by Tennessee law, and Avaya's Complaint is founded on diversity. (Compl. ¶ 4.) A judge sitting in Tennessee is likely to have greater familiarity with the applicable Tennessee contract law than this Court does. This factor favors transfer.

**2.     Practical Considerations That Could Make Trial Easy, Expeditious, And Inexpensive**

Consolidation with SNMPRI's case against Avaya filed in the Eastern District of Tennessee would promote judicial efficiency and reduce the cost of litigation to both parties. Indeed, litigation of that case will not only address the underlying transaction here but will also address Avaya's other unlicensed uses of SNMPRI's copyrighted software as well as its violations of non-party SNMP Research, Inc.'s copyrights. Further, trial in Tennessee will be easier and less expensive than in Delaware because the parties will not have to transport witnesses and documents to a forum where neither party has an office. In sum, as a practical matter, trial in Tennessee will be easier and less expensive and save judicial resources. This factor favors transfer.

**3.     Enforceability Of The Judgment**

SNMPRI has no bank accounts or personal or real estate property located in this District. (Case Decl. ¶ 17.) Therefore, any judgment against SNMPRI could not be enforced in this District. Enforceability of any judgment against SNMPRI therefore favors transfer to the Eastern District of Tennessee where SNMPRI's assets are located.

### 4.      Local Interest In Deciding Local Controversies At Home

There are three principal facts in this dispute, all of which are local to Tennessee.  First, the Red License is a contract governed by Tennessee law, as explained above.  Second, the meeting between SNMPRI and Avaya that is the basis of both of Avaya's alleged causes of action took place in Knoxville, Tennessee.  (Case Decl. ¶ 25.)  Third, SNMPRI created its software in Tennessee and filed its copyrights from Tennessee.  (*Id.* at ¶ 11.)  Thus, this controversy is local to Tennessee.

Further, every other fact in this controversy either touches Tennessee, New Jersey, or Colorado – not Delaware.  The notices of breach and termination were sent from Tennessee to New Jersey.  (Case Decl. ¶ 24.)  Although Avaya is a Delaware corporation, this dispute has nothing to do with Delaware corporate law or the act of incorporating Avaya.  Further, this is not a dispute between Delaware corporate citizens as in *Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, at *13 (D. Del. Jan. 24, 2012); it is a dispute between citizens of different states.  Even these less important facts touch primarily Tennessee.  Accordingly, this factor favors transfer to the Eastern District of Tennessee.

### 5.      Relative Administrative Difficulty Resulting From Court Congestion

In 2011, there were 281 civil filings per judgeship in the Eastern District of Tennessee versus 325 per judgeship in Delaware.  (Pistorino Decl. ¶¶ 4, 5, Exs. C, D.).  Thus, this Court is more congested than the Eastern District of Tennessee.  Moreover, beyond the absolute number of cases, this Court's docket is heavy with complex patent cases that are more time consuming than regular civil litigation.  Indeed, weighting this Court's actions per judgeship by complexity, its caseload is the sixth highest among U.S. District Courts.  (*Id.* at Ex. C.)  The Eastern District of Tennessee ranks thirty-third for weighted actions per judgeship.  (*Id.* at Ex. D.)  This

complexity of the cases on this Court's docket no doubt delays resolution. For example, 13.3% of the pending civil cases in Delaware are over three years old. (*Id.* at Ex. C.) In the Eastern District of Tennessee, only 3.3% are over three years old. (*Id.* at Ex. D.) Accordingly, this Court is more congested than the Eastern District of Tennessee and this factor favors transfer.

### 6.     Public Policies Of The Fora

As outlined in *Jumara*, one factor to consider is the public policies of the fora, *i.e.*, the current venue and the proposed venue. 55 F.3d at 879. Public policy in Delaware encourages Delaware corporations to use Delaware courts to resolve business disputes. *Intellectual Ventures*, 2012 WL 297720 at *13. However, Tennessee is also interested in resolving the disputes of its citizens. *See Flight Solutions, Inc. v. Club Air, Inc.*, 2010 WL 276094, at *5 (M.D. Tenn. 2010) (Tennessee has an "interest in adjudicating [its] citizens' contract disputes . . ."). Thus, this factor is neutral.

The weight of the private and public factors strongly favors transfer. Of the 12 *Jumara* factors, 10 favor transfer, one is neutral, and one favors keeping the case in this District. Indeed, the only factor favoring retention of the case is Plaintiff's choice of forum. Denying SNMPRI's motion to transfer based entirely on this factor alone, where all other factors either favor transfer or are neutral, would make Plaintiff's choice of forum dispositive – which it cannot be. *Link_A_Media*, 662 F.3d at 1223.

Accordingly, the Court should transfer this case to the Eastern District of Tennessee because the case arose there, it is more convenient for the parties based on their relative size and financial condition, the Tennessee court has the power to compel attendance of key non-party witnesses, key documents are located there, SNMPRI prefers it, the contract is governed by Tennessee law, the Eastern District of Tennessee is less congested, the controversy is local to

Tennessee, SNMPRI's assets are located there, and the suit could be consolidated with SNMPRI's suit against Avaya, which subsumes this controversy.

## V.   **CONCLUSION**

For the reasons set forth above, the Court should dismiss this case for lack of personal jurisdiction over SNMPRI and improper venue. In the alternative, the Court should transfer this case to the Eastern District of Tennessee as the proper or more convenient forum.

Dated:  March 9, 2012                        Respectfully submitted,


                                    By:    /s/ Thomas H. Kovach
                                            Thomas H. Kovach (3964)
                                            Karen M. Grivner (4372)
                                            Gregory W. Hauswirth (5679)
                                            THORP REED & ARMSTRONG, LLP
                                            824 Market Street, Suite 710
                                            Wilmington, DE  19801
                                            Telephone:  (302) 250-4750
                                            Facsimile:   (302) 421-9439
                                            Email:  ghauswirth@thorpreed.com
                                            Email:  tkovach@thorpreed.com

                                            James C. Pistorino
                                            PERKINS COIE LLP
                                            3150 Porter Drive
                                            Palo Alto, CA  94304-1212
                                            Telephone:  (650) 838-4300
                                            Facsimile:   (650) 838-4350
                                            Email:  JPistorino@perkinscoie.com

                                            John L. Wood
                                            EGERTON MCAFEE ARMISTEAD & DAVIS, P.C.
                                            900 S. Gay Street
                                            Knoxville, TN  37902
                                            Telephone:  (865) 546-0500
                                            Facsimile:   (865) 525-5293
                                            Email:  jwood@emlaw.com


                                            *Attorneys for Defendant*
                                            *SNMP Research International, Inc.*