IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVAYA INC., <br><br> Plaintiff, <br><br> v. <br><br> SNMP RESEARCH INTERNATIONAL, INC., <br><br> Defendant. | § § § § § § § § § § § § § §  C.A. No. 1:12-cv-00191-RGA-SRF |

## REPLY TO AVAYA'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER

MAY 24, 2012

THORP REED & ARMSTRONG, LLP
Karen M. Grivner (4372)
Gregory W. Hauswirth (5679)
824 Market Street, Suite 710
Wilmington, DE 19801
Telephone: (302) 250-4750
Facsimile: (302) 421-9439
Email: kgrivner@thorpreed.com
Email: ghauswirth@thorpreed.com

Dennis Hopkins
30 Rockefeller Plaza, 25th Floor
New York, NY 10112
Telephone: (212) 262-6900
Facsimile: (212) 977-1649
Email: dhopkins@perkinscoie.com

John L. Wood
EGERTON MCAFEE ARMISTEAD & DAVIS, P.C.
900 S. Gay Street
Knoxville, TN 37902
Telephone: (865) 546-0500
Facsimile: (865) 525-5293
Email: jwood@emlaw.com
*Attorneys for Defendant*
*SNMPR Research International, Inc.*

# **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| A. | This Court Does Not Have Personal Jurisdiction Over SNMPRI in This Case | 1 |
| B. | Alternatively, This Case Should Be Transferred to the Eastern District of Tennessee | 4 |
| | 1. The Appropriate Legal Analysis | 4 |
| | 2. The Only Factor That Weighs Against Transfer is That Avaya Has Chosen To File Suit in This District, And That Should be Given Little Weight | 5 |
| | 3. All of the remaining factors – which are the strongest and most persuasive considerations – favor transfer | 5 |
| |     a. Defendant's Preference | 5 |
| |     b. Where the Claims Arose | 6 |
| |     c. The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition | 6 |
| |     d. Convenience of the Witnesses | 6 |
| |     e. Location of Documents | 7 |
| |     f. Familiarity of the Trial Judge With Applicable State Law | 8 |
| |     g. Practical Considerations That Could Make Trial Easy, Expeditious, and Inexpensive | 8 |
| |     h. Enforceability of the Judgment | 9 |
| |     i. Local Interest in Deciding Local Controversies at Home | 9 |
| |     j. Relative Administrative Difficulty Resulting from Court Congestion | 9 |
| |     k. Public Policies of the Fora | 10 |
| |     l. Analysis of the Foregoing *Jumari* Factors | 10 |
| CONCLUSION | | 10 |

CASES

*A. A. R. Realty Corp. v. U.S. Fire Ins. Co.*,
  335 A.2d 271 (Del. Super. Ct. 1975) ................................................................. 3

*Affymetrix, Inc. v. Synteni, Inc.*,
  28 F.Supp.2d 192 (D. Del.1998) ............................................................... 5, 6, 7

*AVP N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
  295 F.Supp.2d 393 (D. Del. 2002) ..................................................................... 5

*Downing v. Globe Direct LLC*,
  No. 09-CV-693 (JAP), 2010 WL 2560054, at *3 (D. Del. Jun. 18, 2010) ..... 5, 10

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
  623 F.3d 147 (3d Cir. 2010) .............................................................................. 4

*Foster Wheeler Energy Corp. v. Metallgesellschaft AG*,
  Civ. A. No. 91-214-SLR, 1993 WL 669447, at *4 (D. Del. Jan. 4, 1993) .......... 1

*Freedom Mortg. Corp. v. Irwin Fin. Corp.*,
  No. 08-146 GMS, 2009 WL 763899, at *6 (D. Del. Mar. 23, 2009) .................. 9

*Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*,
  940 F.2d 20 (1st Cir. 1991) ............................................................................... 1

*Holland v. Consolidated Freightways Corp.*,
  99 F.Supp.2d 570 (E.D. Pa. 2000) .................................................................... 9

*In re Shuman*,
  277 B.R. 638 (Bankr. E.D. Pa. 2001) ................................................................ 3

*Soda Rental, Inc. v. Magnuss Constr. Co.*,
  1989 WL 124893, at *1 (Del. Super. Oct. 2, 1989) ........................................... 3

*Sprint Nextel Corp. v. iPCS, Inc.*,
  No. 3746-VCP, 2008 WL 2737409 at *10 (Del. Ch. June 14, 2008) ......... 1, 2, 3

*Zazzali v. Swenson*,
  No. 10-950-LPS, 2012 WL 1118776, at *12 (D. Del. Mar. 27, 2012) ............... 5

STATUTES

28 U.S.C. § 157(c)(1) ............................................................................................ 3

28 U.S.C. § 1391(c) .............................................................................................. 4

| | |
|---|---|
| 28 U.S.C. § 1404(a) | 4, 5, 6 |
| 28 U.S.C. § 1406(a) | 4 |
| 28 U.S.C. § 1631 | 4 |
| Del. Code Ann. tit. 10 § 3104(c) (2010) | 1 |

### A. This Court Does Not Have Personal Jurisdiction Over SNMPRI in This Case.

In its opposition brief, Avaya does not contend that SNMPRI is subject to general jurisdiction in Delaware.[1] (*See* Avaya Resp. Br., D.I. 13, at 5-6.) Nor could it; it is indisputable that SNMPRI is not a Delaware corporation and does not regularly transact business in this State. Avaya also does not argue that Delaware's long-arm statute, Del. Code Ann. tit. 10 § 3104(c) (2010), confers specific personal jurisdiction over SNMPRI. (*Id.*) Indeed, Avaya does not assert that its claims arise from a transaction of business in this State or a contract to supply services or things in this State. (*See id.*)[2] Simply put, there is no dispute that the conduct and transactions at issue in this lawsuit have no relationship to Delaware and that personal jurisdiction over SNMPRI cannot be based on such conduct or transactions.

Avaya instead relies on the misguided argument that SNMPRI has supposedly consented to this Court's jurisdiction because it has participated in a completely different lawsuit pending in the Bankruptcy Court for the District of Delaware: the *In re: Nortel Networks Inc., et al.* bankruptcy proceedings.[3] However, a party does not consent to this Court's jurisdiction in a given case merely because it may have participated in a different, **unrelated** case in Delaware. *See Sprint Nextel Corp. v. iPCS, Inc.*, No. 3746-VCP, 2008 WL 2737409, at *10 (Del. Ch. June 14, 2008) (discussed on pages 7 and 8 of the SNMPRI Motion to Dismiss, D.I. 7).[4]

---

[1] Capitalized terms not defined herein shall have the same meaning as in SNMPRI's Motion to Dismiss or Transfer, D.I. 7.

[2] Avaya also has not disputed that even if its business activities could be deemed sufficient to satisfy Delaware's long-arm statute, they would not satisfy the Supreme Court's "minimum contacts" test. (*See* SNMPRI Mot. to Dismiss or Transfer, D.I. 7, at 6-7).

[3] *See SNMP Res. Int'l, Inc. v. Nortel Networks, et al. (In re Nortel Networks, et al.)*, Ch. 11 Case No. 09-10138-KG, Adv. No., 11-bk-53454-KG (Bankr. D. Del. Nov. 2, 2011) [hereinafter *Nortel Bankruptcy Case*].

[4] The cases cited by Avaya do not stand for the proposition that a party's participation in one lawsuit can be deemed as consent to personal jurisdiction in an *unrelated* case. *See Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 23 (1st Cir. 1991) (describing the first and second cases as "based on the same transaction"); *Foster Wheeler Energy Corp. v. Metallgesellschaft AG*, Civ. A. No. 91-214-SLR, 1993 WL 669447, at * 4 (D. Del. Jan. 4, 1993) (the first and second cases "involve common issues of fact and law supported or refuted

This lawsuit involves allegations that SNMPRI has breached a particular license agreement, which was initially entered into between SNMPRI and AT&T Corp-GBCS, and which gave Avaya the right to include SNMPRI's software in certain products that Avaya sold (the "License Agreement"). (*See* Compl., D.I. 2, at ¶¶ 8, 45-62, Ex. A.) Avaya alleges that SNMPRI supposedly breached the License Agreement when it terminated Avaya's right to use and redistribute the licensed software. (*See id.* at ¶¶ 46, 51, 59-60.) Avaya has not alleged that SNMPRI is in breach of any contract other than the License Agreement.

SNMPRI's claims in the *Nortel* bankruptcy have nothing to do with the License Agreement or any of the products covered by the License Agreement. In a sale administered by the *Nortel* bankruptcy court, Avaya obtained certain software products[5] that contain SNMP Research Inc.'s ("SNMPR") and SNMPRI's software. (Compl., D.I. 2, ¶ 13). The SNMPR and SNMPRI software that was contained in these Nortel products is not covered by the License Agreement at issue in this case or any valid license. Thus, Avaya has been distributing the SNMPR and SNMPRI software incorporated in the Nortel products in blatant violation of SNMPRI's and SNMPR's copyrights. Nonetheless, the contracts, products, and facts at issue in the *Nortel* bankruptcy are completely different from those in this case. Because SNMPRI's participation in the *Nortel* bankruptcy is unrelated to this case, that cannot be the basis for this Court's personal jurisdiction over SNMPRI. *See Sprint Nextel Corp.*, 2008 WL 2737409, at *10.

---

by some overlapping evidence; *i.e.*, there is some logical relationship between [the claims at issue in the two suits]").

[5] In its complaint, Avaya refers to SNMPR and SNMPRI software embedded within the Nortel products as the "Avaya Blue Software." That term is misleading insofar as it creates the appearance that Avaya had the right to use the software. Although Nortel and SNMPRI had previously entered into a separate and unrelated license agreement that gave Nortel the right to use SNMPRI's software in the Nortel Software (*see* Compl. ¶¶ 14-17), Avaya is not a party to that license. Although SNMPRI gave Avaya the temporary right to distribute the Nortel Software under an "Accession Agreement" (Compl. ¶ 14), the Accession Agreement is now expired (and was also breached by Avaya). However, neither the SNMPRI/Nortel license, the products that were covered by the Accession Agreement or the Accession Agreement itself are related to this case.

Avaya's argument that SNMPRI has consented to jurisdiction in Delaware fails for another reason: SNMPRI did not willfully select Delaware as the venue for the *Nortel* bankruptcy; rather, that was Nortel's choice. A party's consent to personal jurisdiction "must be specific and clear." *Soda Rental, Inc. v. Magnuss Constr. Co.*, 1989 WL 124893, at *1 (Del. Super. Ct. Oct. 2, 1989). Similarly, a waiver of a party's objection to personal jurisdiction must be intentional. *A. A. R. Realty Corp. v. U.S. Fire Ins. Co.*, 335 A.2d 271, 276 (Del. Super. Ct. 1975). By participating in the *Nortel* bankruptcy, SNMPRI did not specifically, clearly, or intentionally consent to personal jurisdiction in Delaware. SNMPRI's filing of the adversary proceeding in the Bankruptcy Court for the District of Delaware was compelled by the Bankruptcy Court's retention of ***exclusive jurisdiction*** to hear all disputes relating to the sale of Nortel's assets to Avaya.[6] (*See Nortel Bankruptcy Case*, Case No. 09-10138(KG), D.I. No. 1514, at ¶ 18) ("This Court retains exclusive jurisdiction to interpret, construe, implement and enforce the terms and provisions of, and to resolve any and all dispute that may arise under or in connection with this Order ...."). This fact alone distinguishes the cases cited by Avaya.[7]

Finally, the Court should deny Avaya's request to take jurisdictional discovery. To obtain jurisdictional discovery, the plaintiff must "present[] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and

---

[6] Avaya claims that SNMPRI could have brought suit in Tennessee for breach of the Accession Agreement, implying that SNMPRI's decision to include Avaya in the adversary proceeding in bankruptcy court was willful. (Avaya Resp. Br., D.I. 13. at 6). Avaya's argument is misleading, because any dispute over a breach of the Accession Agreement would require an adjudication of the Bankruptcy Court's sale order (which, Avaya contends, gives it the right to sell the Nortel software that was covered by the Accession Agreement) over which the Bankruptcy Court has exclusive jurisdiction.

[7] Avaya confuses the issues by posing the irrelevant argument that SNMPRI's adversary action against Avaya is not entirely a "core" proceeding, therefore it is "not a part of" or "related to" the core bankruptcy proceeding. (Avaya Resp. Br., D.I. 13, at 6.) Avaya is completely wrong. A non-core proceeding is, by definition, "related to" the bankruptcy case. *See In re Shuman*, 277 B.R. 638, 646 (Bankr. E.D. Pa. 2001) (citing 28 U.S.C. § 157(c)(1) (1998)). Further, there is no significance to Avaya's reference to the fact that SNMPRI did not, in the bankruptcy complaint, express its consent to the Bankruptcy Court entering a final judgment. At this early stage, SNMPRI has not asked the Bankruptcy Court or the District Court to enter a final judgment – something that may never occur.

the forum state." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (quotations omitted). Avaya has not met this burden. It already knows the salient facts relating to SNMPRI's supposed consent to jurisdiction in Delaware. Thus, jurisdictional discovery in this case would be an unwarranted fishing expedition.

**B.     Alternatively, This Case Should Be Transferred to the Eastern District of Tennessee.**

Assuming, *arguendo*, that this Court did have personal jurisdiction over SNMPRI, the Court should nevertheless transfer this case to the Eastern District of Tennessee.[8] Avaya concedes, as it must, that the Eastern District of Tennessee would be a proper forum for this dispute – in part, because the conduct and transactions at issue occurred in that district, many of the relevant witnesses and documents are located there, and Avaya is subject to personal jurisdiction in that forum. Avaya's argument against transfer boils down to the notion that it supposedly would be more convenient for this Court to maintain jurisdiction over this case rather than transferring it to the more natural forum of the Eastern District of Tennessee. However, Avaya misapplies the law and mischaracterizes the facts.

**1.     The Appropriate Legal Analysis.**

In its brief, Avaya misapplies the twelve non-exhaustive public and private interest factors identified by the Third Circuit when considering motions for transfer brought under 28 U.S.C. § 1404(a) (the so-called "*Jumara* factors"), and misconstrues how a Court should analyze and evaluate them. Avaya contends – incorrectly – that 7 of the 12 factors supposedly weigh against transfer and, therefore, transfer must not be appropriate. When a Court considers a

---

[8] Contrary to Avaya's assertion (Avaya Resp. Br., D.I. 13, at 6), venue is not proper in this district pursuant to 28 U.S.C. § 1391(c) – which expressly limits venue to districts in which the "defendant is subject to the court's personal jurisdiction with respect to the civil action in question" – because, for all the reasons detailed above, SNMPRI is not subject to the Court's personal jurisdiction. Accordingly, in the event that the Court finds that it lacks personal jurisdiction over SNMPRI, an alternative to dismissing the case would be to transfer the case to the Eastern District of Tennessee pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631.

motion for transfer pursuant to Section 1404(a), its role is not to make a simple, mechanical tally of the number of factors that weigh in favor of transfer and the number of factors that weigh against transfer, and then decide the motion based on which side has the numerical advantage. Quite to the contrary, "a transfer analysis is a thoughtful weighing of interests. And, as an exercise of discretion, this process is, at least to some extent, subjective." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 208 (D. Del.1998). Thus, the transfer analysis depends on the *quality*, not just quantity, of the reasons why transfer is appropriate.

2. **The Only Factor That Weighs Against Transfer is That Avaya Has Chosen To File Suit in This District, and That Should be Given Little Weight.**

The *only* factor that weighs against transfer is the fact that Avaya inexplicably chose to litigate in this District – a factor that is given little weight in cases, like this, where "the operative facts ... occurred outside of Delaware." *Downing v. Globe Direct LLC*, No. 09-CV-693 (JAP), 2010 WL 2560054, at *3 (D. Del. June 18, 2010). Even when courts give deference to a plaintiff's selection of Delaware as a forum, that deference often gives way to other, more compelling arguments in favor of transfer. For example, in *Zazzali v. Swenson*, a case cited by Avaya but which squarely supports SNMPRI's argument, the Court gave ample deference to the plaintiff's decision to bring suit in Delaware, but nevertheless granted defendant's motion to transfer the case to the District of Idaho in light of the other *Jumara* factors. *Zazzali v. Swenson*, No. 10-950-LPS, 2012 WL 1118776, at * 12 (D. Del. Mar. 27, 2012); *see also Affymetrix, Inc.*, 28 F.Supp.2d at 208; *AVP N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F.Supp.2d 393 (D. Del. 2002).

3. **All of the remaining factors – which are the strongest and most persuasive considerations – favor transfer.**

   a. **Defendant's Preference**

Avaya does not dispute that SNMPRI prefers to transfer this case to the Eastern District

of Tennessee, and that this factor supports transfer. (Avaya Resp. Br., D.I. 13, at 10).

### b. Where the Claims Arose

Avaya does not dispute that the claims arose outside of Delaware, or that that the claims actually arose in Tennessee. (*Id.*) Nor has Avaya disputed that this factor supports transfer. (*Id.*) This factor is particularly significant in this case because *there is absolutely no meaningful connection between this dispute and Delaware*. But for the fact that Avaya raced to this Courthouse, in a blatant example of forum shopping, there would be no reason why a Delaware court should hear this dispute.

### c. The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition.

Avaya cannot dispute that SNMPRI is by far the smaller company, with many fewer employees and much less revenue – which is what this factor asks the Court to consider. Avaya tries to deflect the Court's attention by referring to SNMPRI's participation in the *Nortel* bankruptcy. (Avaya Resp. Br. at 10). That is not a valid consideration under this factor. In any event, Avaya does not explain why SNMPRI should be forced to litigate issues over the License Agreement in this forum merely because it may be litigating different, unrelated issues in Delaware in the Nortel bankruptcy.

### d. Convenience of the Witnesses

The convenience of the witnesses is traditionally a highly important factor in a Section 1404(a) analysis. *Affymetrix*, 28 F.Supp.2d at 203. In this case, the convenience that Tennessee offers should be given a great amount of significance. Avaya does not contend that any of the witnesses are located in Delaware, or that it would be inconvenient for its witnesses to appear in Tennessee. Indeed, Avaya found it convenient to travel to Tennessee to hold discussions relating to their breach of the License Agreement and the termination of their licensing rights. Furthermore, upon information and belief, at least one of Avaya's main witnesses, Gary Barnett, a senior Avaya Executive who discussed Avaya's breach with SNMPRI, is a resident of

Tennessee.[9] On the other hand, all of SNMPRI's employees – and all of the people who participated in SNMPRI's termination of the License Agreement – are located in Tennessee.

There also are a number of third-party witnesses, like Dr. Case, Mr. Wood, and representatives of SNMPR, who would be inconvenienced by traveling to Delaware and who are outside of the Court's subpoena power. Although Avaya attempts to downplay the significance of the burden on third-parties, this Court has previously granted a motion to transfer primarily because third-party fact witnesses were located outside of Delaware and were not subject to the Court's subpoena power. *Affymetrix*, 28 F.Supp.2d at 205, 208-209.

Unable to refute any of these facts, Avaya's argument focuses once again on the *Nortel* bankruptcy. This is a red herring. Avaya assumes, without foundation, that (a) the witnesses in this case will overlap with the witnesses in the *Nortel* bankruptcy, and (b) the bankruptcy case will proceed to the point where depositions or trial occur – neither of which will necessarily be the case. In any event, just because a witness may be compelled to appear in Delaware in one case does not mean that it is convenient for the witness to do so in another unrelated case.

### e. Location of Documents

Avaya does not contend that any relevant documents are located in Delaware, nor does it dispute that the documents relating to SNMPRI's software and licenses are located in Tennessee. Thus, this factor weighs in favor of transfer. However, Avaya suggests that the Court should disregard this factor because SNMPRI supposedly will be required to produce the same documents in Delaware in connection with the *Nortel* bankruptcy. That is not likely to be true because the *Nortel* case involves different contracts, different documents, and different products from this case. Moreover, Avaya disregards the likelihood that it will only be permitted to review certain highly sensitive and proprietary materials (*e.g.*, the source code for the relevant software) in Tennessee.

---

[9] *See, e.g.,* http://www.avaya.com/usa/about-avaya/our-company/leadership/gary-e-barnett (last visited May 10, 2012).

### f. Familiarity of the Trial Judge With Applicable State Law

Avaya concedes that this factor weighs in favor of transfer. Tennessee judges are more experienced with the application of Tennessee law, which governs the License Agreement, than judges in Delaware.

### g. Practical Considerations That Could Make Trial Easy, Expeditious, and Inexpensive

The Tennessee litigation is designed to fully resolve not only disputes over the License Agreement, but also the related copyright infringement claims concerning Avaya's unlicensed use of SNMPRI's software. The Tennessee action also involves an additional party – SNMPR – whose rights are not being adjudicated in this action. Furthermore, the Tennessee Court has already issued a scheduling order (*SNMP Res. Inc. v. Avaya Inc.*, No. 3:12-CV-117, Dkt. 24 (E.D. Tenn. May 14, 2012)), ordering the parties to participate in a Rule 26(f) discovery conference, and ordering the parties to submit their Rule 26(f) report. Thus, the case in Tennessee is primed to move forward.

The alternative to transferring this case to Tennessee is that some of the same or similar issues will be litigated in multiple districts at the same time, albeit with an additional party in Tennessee. Such piecemeal litigation not only would prove overly expensive and wasteful of judicial (and the parties') resources, but it also would create an unnecessary risk of conflicting outcomes. For example, Avaya has moved in this case for a preliminary injunction that would essentially "un-terminate" its license rights in the License Agreement.[10] Depending on the outcome of that motion, conflicts could arise with a decision issued by the Tennessee court. Similarly, a ruling by the Tennessee court that Avaya is infringing SNMPR or SNMPRI's copyrights could conflict with a ruling by this Court that the License Agreement has not been

---

[10] The fact is that Avaya's rights under the License Agreement were already terminated on February 1, 2012.

terminated. Only the Tennessee court can resolve all of the parties' issues. Thus, this factor weighs strongly in favor of transfer. *See Freedom Mortg. Corp. v. Irwin Fin. Corp.*, C.A. No. 08-146 GMS, 2009 WL 763899, at * 6 (D. Del. Mar. 23, 2009) (granting motion to transfer, in part because of risk of "conflicting results, confusion, expense and waste of judicial resources"); *Holland v. Consolidated Freightways Corp.*, 99 F.Supp.2d 570, 573 (E.D. Pa. 2000) (factors in favor of transfer included "piecemeal litigation" if the case was not transferred).

### h.   Enforceability of the Judgment

SNMPRI has no assets in this district to satisfy a potential judgment. On the other hand it does have assets in Tennessee. Thus, this factor favors a transfer.

### i.   Local Interest in Deciding Local Controversies at Home

The majority of the operative facts occurred outside of Delaware, therefore this factor weighs in favor of transfer. Avaya does not dispute this. (Avaya Resp. Br. at 13.) This factor is particularly significant in this case. Unlike Avaya, SNMPRI is not a de-centralized, multi-national corporation. SNMPRI is a relatively small, closely held company that is run from a farm in Knoxville. The impact of an adverse decision could have dramatic impact on SNMPRI that would be felt in Tennessee, not Delaware. Further, the operative facts that gave rise to the parties' dispute occurred in Tennessee, in part or in whole. Tennessee's courts have a strong interest in deciding matters that occurred on Tennessee soil, involving Tennessee citizens.

### j.   Relative Administrative Difficulty Resulting from Court Congestion

This case should be heard by the Court with the greater chance of resolving the issues the fastest. There is no dispute that this Court has a substantially heavier civil caseload, and would take longer to hear this case than the Eastern District of Tennessee.[11] Furthermore, as described

---

[11] The United States Courts Judicial Caseload Profile shows that in 2011, the Eastern District of Tennessee had 281

568861v9

in subsection g, above, the Tennessee case is moving forward expeditiously, as the Tennessee court has already ordered the parties to begin planning the discovery process.

### k. Public Policies of the Fora

This factor is largely neutral. However, where, as here, the only connection that a case has to the forum is that a party is organized under Delaware law, that connection is not sufficient to prevent a transfer. *Downing*, 2010 WL 2560054, at *4.

### l. Analysis of the Foregoing *Jumari* Factors

Nearly all of the relevant factors favor transfer, and there is an important underlying reason for that: this case has no relationship to Delaware. The parties and witnesses are not located in Delaware, the transactions at issue did not occur in Delaware, and the relevant evidence is not located in Delaware. Moreover, SNMPRI is a closely-held, Tennessee-based business that would be greatly inconvenienced if it were forced to litigate unnecessarily in this forum. Conversely, Avaya offers no significant reason why this case should be tried in Delaware – other than that it raced to the courthouse and filed its lawsuit here, in a blatant example of forum shopping. Should this Court find that it has personal jurisdiction over SNMPRI in this action, then, the effect of not transferring this case to Tennessee would be to create inefficiency, piecemeal litigation, and a risk of conflicting judgments.

## CONCLUSION

For the foregoing reasons, SNMPRI respectfully requests that the Court grant its motion to dismiss or, in the alternative, to transfer this case to the Eastern District of Tennessee.

---

civil actions per judgeship while Delaware had 325. *See* U.S. Courts Judicial Caseload Profile, *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2011/District%20FCMS%20Profiles%20September%202011.pdf&page=14 (last visited May 24, 2012).

568861v9

-10-

Dated: May 24, 2012                    By: /s/ Karen M. Grivner

    Karen M. Grivner
    THORP REED & ARMSTRONG, LLP
    KAREN M. GRIVNER (4372)
    GREGORY W. HAUSWIRTH (5679)
    824 MARKET STREET, SUITE 710
    WILMINGTON, DE 19801
    TEL.: (302) 250-4750; FAX: (302) 421-9439
    EMAIL: GHAUSWIRTH@THORPREED.COM
    EMAIL: KGRIVNER@THORPREED.COM

    Dennis Hopkins
    PERKINS COIE LLP
    30 Rockefeller Plaza, 25th Floor
    New York, NY 10112
    Tel.: (212) 262-6900 / Fax: (212) 977-1649
    Email: dhopkins@perkinscoie.com

    John L. Wood
    EGERTON MCAFEE ARMISTEAD & DAVIS, P.C.
    900 S. Gay Street
    Knoxville, TN 37902
    Tel.: (865) 546-0500/ Fax: (865) 525-5293
    Email: jwood@emlaw.com

    *Attorneys for Defendant*
    *SNMP Research International, Inc.*