**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVAYA INC., Plaintiff, | § | |
| v. | § | C.A. No. 1:12-cv-00191- RGA-SRF |
| SNMP RESEARCH INTERNATIONAL, INC., Defendant. | § | |

# DEFENDANT SNMP RESEARCH INTERNATIONAL, INC.'S BRIEF IN REPLY TO AVAYA INC.'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE THE COMPLAINT

DATE OF FILING: May 24, 2012

THORP REED & ARMSTRONG, LLP
Karen M. Grivner (4372)
Gregory W. Hauswirth (5679)
824 Market Street, Suite 710
Wilmington, DE 19801
Telephone: (302) 250-4750
Facsimile: (302) 421-9439
Email: kgrivner@thorpreed.com
Email: ghauswirth@thorpreed.com

PERKINS COIE, LLP
Dennis C. Hopkins
30 Rockefeller Plaza, 25th Floor
New York, NY 10112-0015
Telephone: (212) 262-6916
Facsimile: (212) 977-1649
Email: dhopkins@perkinscoie.com

EGERTON MCAFEE ARMISTEAD & DAVIS, P.C.
John L. Wood
900 S. Gay Street, Suite 1400
Knoxville, TN 37902
Telephone: (865) 546-0500
Facsimile: (865) 525-5293
Email: jwood@emlaw.com

**TABLE OF CONTENTS**


**Page**

I. DEFENDANT SNMP RESEARCH INTERNATIONAL, INC.'S BRIEF IN REPLY TO AVAYA INC.'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE THE COMPLAINT .......... 1

A. Plaintiff still has no legal or factual basis for its claim for declaratory judgment .......... 1

1. The Complaint refutes Avaya's claim that it is entitled to a declaratory judgment .......... 1

2. Avaya is not entitled to a declaratory judgment under Tennessee contract law .......... 2

3. This Court should decline to hear Avaya's declaratory judgment claim because it offends the underlying policy of the Declaratory Judgment Act .......... 6

B. Avaya has no legal or factual basis for its second or third claims .......... 7

C. Avaya's analysis of Rule 408 is misguided .......... 8

1. Avaya fails to acknowledge Third Circuit jurisprudence .......... 8

2. Avaya's reliance on the "permissible purpose" exception is misplaced .......... 9

3. The Complaint fails to plead facts that would be admissible under Rule 408 showing that Avaya is entitled to relief under its second or third theories of liability .......... 10

II. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affiliated Mfrs., Inc v. Aluminum Co. of Am.*,
56, F3d 521, 528 (3d Cir. 1995) .......... 9

*AmSouth Bank v. Dale*,
386 F.3d 763 (6th Cir. 2004) .......... 6

*Arnold v. Wilder*,
657 F.3d 353 (6th Cir. 2011) .......... 9

*Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*,
195 S.W.3d 637 (Tenn. Ct. App. 2006) .......... 3, 4, 7

*Bruce v. Bruce*, 801 S.W.2d at 102 (Tenn. Ct. App. 1990) .......... 7

*Carolina Indus. Prods., Inc. v. Learjet, Inc.*,
168 F.Supp.2d 1225 (D. Kan. 2001) .......... 10

*Carter v. Krueger*,
916 S.W.2d 932 (Tenn. Ct. App. 1995) .......... 5, 7

*Ciolli v. Iravani*,
625 F.Supp.2d 276 (E.D. Pa. 2009) .......... 8, 9

*Del. State Univ. Hous. Found. v. Ambling Mgmt. Co.*,
556 F.Supp.2d 367 (D. Del. 2008) .......... 6

*E.E.O.C. v. Univ. of Penn.*,
580 F.2d 969 (3d Cir. 1988) .......... 6

*Gruntal & Co., Inc. v. Steinberg*,
837 F.Supp. 85 (D.N.J. 1993) .......... 6

*Lo Bosco v. Kure Eng'g Ltd.*,
891 F.Supp. 1035 (D.N.J. 1995) .......... 8, 9

*Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*,
315 S.W.3d 800 (Tenn. Ct. App. 2009) .......... 5, 7

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*,
998 F.2d 1224 (3d Cir. 1993) .......... 8, 9

*Planters Gin Co. v. Fed. Compress & Warehouse Co.*,
78 S.W.3d 885, 890 (Tenn. 2002) .......... 2

*Rader v. Share Builder, Corp.*
772 F.Supp.2d 599 (D. Del. 2011) .......... 9

*Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*,
111 F.3d 1284 (6th Cir. 1997) ....................................................................................................9

*Wallace v. Nat'l Bank of Commerce*,
938 S.W.2d 684 (Tenn. 1997) ....................................................................................2, 4, 6, 7

**STATUTES**

Declaratory Judgment Act, 28 U.S.C. § 2201(a) (2006) ...........................................................6

**RULES**

Fed. R. Civ. P. 8 ....................................................................................................................10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1,

Fed. R. Civ. P. 12(f) ...............................................................................................1, 2, 6, 8, 10

Fed. R. Evid. 408 ..........................................................................................................8, 9, 10

Local Rule 7.1.2(b) ....................................................................................................................1

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 205 (1979) .......................................................................2

# I. DEFENDANT SNMP RESEARCH INTERNATIONAL, INC.'S BRIEF IN REPLY TO AVAYA INC.'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE THE COMPLAINT

COMES NOW the Defendant, SNMP Research International, Inc. ("SNMPRI"), by and through counsel, pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure and this Honorable Court's Local Rule 7.1.2(b) and reply to Avaya Inc.'s Response Brief in Opposition to Defendant's Motion to Dismiss and/or Strike the Complaint (the "Response Brief," D.I. 14).

## A. Avaya still has no legal or factual basis for its claim for declaratory judgment.

1. <u>The Complaint refutes Avaya's claim that it is entitled to a declaratory judgment</u>.

In its Complaint, Avaya seeks a declaratory judgment that SNMPRI improperly terminated the License Agreement. (Compl., D.I. 2, at ¶ 46.) Avaya insists that it has "pleaded facts sufficient to state a claim for the declaratory judgment" and supports this statement with a paraphrase of Section 18(b) of the License Agreement: "in the case of a breach, SNMP was to notify Avaya in writing of any alleged breach and Avaya had forty-five days from receipt of SNMP's written notification to cure any alleged breach." (Resp. Br., D.I. 14, at pp. 11-12.; *see also* Compl., D.I. 2, at <u>Ex. A</u> Lic. Ag. § 18(b).) However, Avaya identifies no facts pled in the Complaint indicating (1) that SNMPRI failed to give Avaya written notice of its breach or (2) that SNMPRI failed to provide Avaya the 45 day cure period before terminating Avaya's rights under the License Agreement. Thus, SNMPRI's termination of Avaya's license rights was proper in all respects.

Not even the facts alleged in Avaya's Complaint support its argument. (*See* Compl., D.I. 2, at ¶¶ 18, 31.) The Complaint alleges that SNMPRI sent written notice on November 1, 2011 that Avaya was in breach of the License Agreement. (*Id.* at ¶ 18.) After Avaya failed to cure for at least 90 days, more than ample time to make a payment, SNMPRI had no choice but to terminate Avaya's rights under the License Agreement. According to the Complaint, SNMPRI sent notice terminating Avaya's

license rights on February 1, 2012.[1] (*Id.* at ¶ 31.) Avaya's own allegations, if taken as true, would show that SNMPRI acted reasonably and within the scope of its contractual rights. Thus, Avaya's claim for declaratory judgment should be dismissed pursuant to Rule 12(b)(6).

2. Avaya is not entitled to a declaratory judgment under Tennessee contract law.

Because it did not have facts sufficient to plead a credible declaratory judgment claim, Avaya attempts to contrive a legal basis for its claim out of Tennessee contract law. (*See* Resp. Br., D.I. 14, at 11-12.) Although SNMPRI agrees that Tennessee law governs the construction of the License Agreement (*see* Compl., D.I. 2, at Ex. A Lic. Ag. § 32), Avaya's argument ignores Tennessee's strong respect for unambiguous contract language, *see Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002), and is misguided at best.

First, Avaya relies upon the "duty of good faith in the performance of contracts" that Tennessee infers into all contracts. *See Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1997). However, Avaya misunderstands the nature of this duty which was explained by the Tennessee Supreme Court in a case cited by Avaya as follows:

> It is true that there is implied in every contract a duty of good faith and fair dealing in its *performance and enforcement*, and a person is presumed to know the law. *See* Restatement (2d) Contracts, § 205 (1979). What this duty consists of, however, depends upon the individual contract in each case. In construing contracts, courts look *to the language of the instrument and to the intentions of the parties, and impose a construction which is fair and reasonable.*

*Id.* at 686 (emphasis added). To determine whether a party has performed a contract in good faith, "the court must judge the performance against the intent of the parties as determined by a *reasonable and fair construction of the language of the instrument.*" *Id.* (emphasis added). Moreover, the implied

[1] Although Plaintiff insists that SNMPRI terminated, attempted to terminate, or sent notice of termination of the "License Agreement" (*see* Compl., D.I. 2, ¶¶ 31-33, 40-41, 43, 46, 51, 59-60), nothing in the notice of termination mentions terminating the License Agreement in its entirety. (*See* Compl., D.I. 2, Ex. B, Ltr. from John L. Wood to Joseph Dearing (Feb. 1, 2012).) Rather, the letter provides notice that SNMPRI terminated Plaintiff's *Internal Use and Redistribution Rights* under the License Agreement as provided in Section 18(b) of the License Agreement. (*Id.*)

obligation of good faith and fair dealing "does not . . . create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 643 (Tenn. Ct. App. 2006) (citations omitted).

Under Tennessee law, a court must look to the express language of a contract to determine whether the parties have performed their duties in good faith. *Id.* The implied duty of good faith and fair dealing may not be used to "circumvent or alter the specific terms of the parties' agreement." *Id.* Despite these sound constraints, Avaya wants this Court to find that it performed its obligation to pay royalties under the License Agreement in good faith, even though it did not make any royalty payments since 2010 and withheld paying royalties due and owing to coerce SNMPRI into accepting a number of new terms—including forbearing from exercising its express and unambiguous termination rights.

Avaya already was under an existing obligation to pay royalties, so SNMPRI did not have to extend additional courtesies and benefits to Avaya to obtain what Avaya already owed under the License Agreement. By arguing that SNMPRI had to do anything more than provide written notice of the breach and 45 days to cure, Avaya asks this Court to alter the specific, express terms of the License Agreement, create new rights for Avaya, impose new obligations, and construe the License Agreement in a way that is neither reasonable nor fair, all of which are contrary to Tennessee law. *Id.*

Second, Avaya asserts that its claim for a declaratory judgment is proper because SNMPRI was required "to negotiate in good faith and accept Avaya's reasonable efforts to cure." (Resp. Br., D.I. 14, at p. 12.) Avaya's argument in its Response Brief detours quite a bit from the facts alleged in its Complaint. Even so, Avaya cannot prevail under either theory, new or old.

In its Complaint, Avaya asserts that SNMPRI had a duty to negotiate in good faith the "Standstill Agreement," allowing it to use the Software by paying an "agreed upon Royalty Fee related to the existing License" and taking specific steps to cure its breach. (Compl., D.I. 2, ¶¶ 22-27, 29-32,

50-51, 57, 60.) The "Standstill Agreement" was a potential new agreement, and the common law duty of good faith does not apply to the negotiation of potential contracts. *See Wallace*, 938 S.W.2d at 687; *Barnes & Robinson*, 195 S.W.3d at 644. Assuming, *arguendo*, that SNMPRI did not act in good faith while negotiating the Standstill Agreement, Avaya fails to state a claim for which relief can be granted.

Avaya's new argument in its Response is that SNMPRI had a duty to negotiate a cure of Avaya's breach in good faith, which effectively would modify the License Agreement. (Resp. Br., D.I. 14, at pp. 12-13.) Avaya had a unilateral obligation to cure its breach, by, among other things, paying to SNMPRI all unpaid royalties and accrued interest owed under the License Agreement within 45 days of receiving SNMPRI's notice of default. Avaya refused to do so, withholding payment in hopes of forcing SNMPRI into a compromise that was more advantageous to Avaya.

Avaya cites to no law to support its conduct and disregards Tennessee law that "[p]erformance of a contract according to its terms cannot be characterized as bad faith." *Wallace*, 938 S.W.2d at 687. To determine if a party has acted in bad faith, Tennessee courts look to the written terms of the contract which set forth each party's obligations for performance. *See id.* at 687 ("The language of the agreements clearly states the terms and reflects the intent of the parties."). If the alleged "wrongful" conduct was simply one party's performing the contract according to its terms, then there is no bad faith. *Id.* Avaya argues that SNMPRI's performance of the License Agreement according to its terms and its insistence that Avaya perform according to its terms violated the implied duty of good faith and fair dealing. Under *Wallace*, this argument fails.

Finally, Avaya asserts that it states a claim for declaratory judgment because "SNMP was obligated to respond to Avaya's reasonable overtures in good faith and to reasonably accept its offer to cure." (Resp. Br., D.I. 14, at 11-12.) Besides being unreasonable because Avaya had not paid SNMPRI royalties since 2010 and still refuses to pay, this assertion is unsupported by Tennessee law.

Both of Avaya's cases involve construction contracts. *See Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800 (Tenn. Ct. App. 2009); *Carter v. Krueger*, 916 S.W.2d 932 (Tenn. Ct. App. 1995). In both cases, the contractor failed to complete the work per the contract specifications. *See Madden Phillips Constr., Inc.*, 315 S.W.3d at 812; *Carter*, 916 S.W.2d at 934. Also in both cases, the other party terminated the contract *without any notice* to the contractor and without giving the contractor the opportunity to cure the improper or incomplete work. *See Madden Phillips Constr., Inc.*, 315 S.W.3d at 823-24; *Carter*, 916 S.W.2d at 934. In both cases, the court found that the other party had a *duty to notify* the contractor of its defective performance and provide the contractor with a reasonable opportunity to cure. *See Madden Phillips Constr., Inc.*, 315 S.W.3d at 823-24; *Carter*, 916 S.W.2d at 935. Finally, in both cases, the court implied this duty because the written contract did not contain an express provision requiring notice and an opportunity to cure. *See Madden Phillips Constr., Inc.*, 315 S.W.3d at 823-24; *Carter*, 916 S.W.2d at 935 (noting that "contracting parties should endeavor to define their respective rights and obligations precisely").

These cases do not help Avaya and are easily distinguished. Even if these cases could be extended to a sophisticated contract like the License Agreement, Avaya did not plead that SNMPRI failed to give it notice of its breach of the License Agreement; in fact, it admits that SNMPRI provided written notice of its breach. (Compl., D.I. 2, at ¶ 18.) Avaya did not plead that SNMPRI terminated the License Agreement without giving it a reasonable opportunity to cure;[2] instead, it admits that SNMPRI gave it more than double the required cure period to cure its breach. (*Id.* at ¶ 31.)

Avaya could cure only by performing each and every one of its obligations under the License Agreement, and, it was not bad faith for SNMPRI to insist that Avaya uphold its end of the bargain.

---

[2] Again, SNMPRI has never attempted to terminate the License Agreement. (*See* Compl., D.I. 2, Ex. B, Ltr. from John L. Wood to Joseph Dearing (Feb. 1, 2012).) Rather, in accordance with the unambiguous terms of the License Agreement, SNMPRI provided notice that Avaya's *Internal Use and Redistribution Rights* under the License Agreement were terminated. (*Id.*)

*See Wallace*, 938 S.W.2d at 687 ("Performance of a contract according to its terms cannot be characterized as bad faith."). Yet Avaya failed to cure. (Resp. Br., D.I. 14, at p. 12.) Avaya has identified nothing in the License Agreement or Tennessee law indicating that its empty offer to perform under its own new terms, in lieu of performing its existing obligations, were sufficient to cure a breach of contract. Therefore, Avaya's claim has no legal basis and must be dismissed under Rule 12(b)(6).

3. <u>This Court should decline to hear Avaya's declaratory judgment claim because it offends the underlying policy of the Declaratory Judgment Act</u>.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (2006), a declaratory judgment is a remedy that is entirely within the court's discretion. *Del. State Univ. Hous. Found. v. Ambling Mgmt. Co.*, 556 F.Supp.2d 367, 373 (D. Del. 2008). A court can decline to hear a declaratory judgment action if the "declaratory judgment action will not serve a useful purpose or is otherwise undesirable." *Id.* (quoting *Gruntal & Co., Inc. v. Steinberg*, 837 F.Supp. 85, 89 (D.N.J. 1993)). Moreover, courts take a dim view of plaintiffs who rush to the courthouse to file a declaratory judgment action in anticipation of the opposing party's imminent lawsuit in a less favorable forum. *See E.E.O.C. v. Univ. of Penn.*, 580 F.2d 969, 976-77 (3d Cir. 1988) (allowing a second-filed suit to proceed because the first-filed suit was a blatant attempt to engage in forum shopping and avoid an imminent lawsuit); *see also AmSouth Bank v. Dale*, 386 F.3d 763, 787 (6th Cir. 2004) ("Where a pending coercive action filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified.").

Similarly, Avaya filed this case only five days after it received a third draft of the proposed "Standstill Agreement" and the very next day after it determined that "it was clear that negotiations had broken down and that further discussions between them would be fruitless." (Compl., D.I. ¶¶ 37, 39.) At that point, Avaya knew that SNMPRI's lawsuit was imminent, and this case is little more than

Avaya's race to the courthouse to attempt to gain an undeserved advantage by securing the forum of its choice. Thus, this Court should decline to exercise its discretion to hear Avaya's declaratory judgment claim for the policy reasons underlying the Declaratory Judgment Act.

**B. Avaya has no legal or factual basis for its second or third claims.**

Avaya's breach of contract and breach of the implied covenant of good faith and fair dealing claims are as defective as its first claim. Allegedly, "SNMP[RI] breached the License Agreement by negotiating in bad faith, demanding that Avaya consent to onerous commercially unreasonable demands in order to continue its relationship with SNMP[RI], and terminating the License Agreement despite Avaya's good faith attempts to fully cure any alleged breach." (Resp. Br., D.I. 14, at p. 10.)

Contrary to Avaya's claims, SNMPRI negotiated with Avaya in good faith. However, even if this Court accepts Avaya's baseless allegations, which SNMPRI denies, there is no duty to negotiate a new agreement or modifications of a contract in good faith without an express contractual provision requiring good faith negotiations. S*ee Barnes & Robinson*, 195 S.W.3d at 644; *see also Bruce v. Bruce*, 801 S.W.2d at 102 (Tenn. Ct. App. 1990). Moreover, the implied duty of good faith and fair dealing cannot create new contractual rights or obligations or modify express contractual terms, *Barnes & Robinson*, 195 S.W.3d at 643, and performing the License Agreement according to its terms cannot constitute bad faith. *Wallace*, 938 S.W. 2d at 687.

Avaya does not point to any express agreement to negotiate in good faith and relies solely upon the implied covenant of good faith and fair dealing for its claims. Avaya does not point to any language in the License Agreement that SNMPRI breached and alleges that SNMPRI complied with the License Agreement and Tennessee law by giving Avaya written notice of its breach, and ample opportunity to cure. (*See* Compl., D.I. 2, ¶¶ 18, 31.) *See Madden Phillips Constr., Inc.*, 315 S.W.3d at 812; *Carter*, 916 S.W.2d at 934. Because Avaya has identified no law showing that SNMPRI's

conduct, as alleged in the Complaint, constitutes a breach of contract or a breach of the implied duty of good faith and fair dealing, the Court should dismiss the Complaint pursuant to Rule 12(b)(6).

**C. Avaya's analysis of Rule 408 is misguided.**

1. Avaya fails to apply Third Circuit jurisprudence.

Avaya asserts that "Rule 408 bars only use of conduct and statements made during compromise negotiations to prove liability for or the invalidity of the claim that was the subject of the negotiations." (Resp. Br., D.I. 14, at p. 9.) To support this argument, Avaya cites to cases from the Fourth, Sixth, Eighth, Tenth, and D.C. Circuits. (*See id.* at 8.) Whether or not this is the law in those Circuits, the Third Circuit has not adopted this rule, and, in fact applies a different standard for determining when evidence of prior settlement negotiations should be excluded under Rule 408. *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*, 998 F.2d 1224, 1226-27 (3d Cir. 1993); *see also Ciolli v. Iravani*, 625 F.Supp.2d 276, 286-87 (E.D. Pa. 2009).

In the Third Circuit, Rule 408 excludes evidence of settlement negotiations in an action raising a claim different from the one that was the subject of the settlement negotiations so long as the claim is *related* to the dispute that was the subject of the settlement negotiations. *See Petruzzi's*, 998 F.2d at 1226-27 (affirming the District Court's application of Rule 408 to exclude evidence of the defendants' settlements in five prior antitrust actions brought by other plaintiffs); *see also Ciolli*, 625 F.Supp.2d at 286-87 (holding that "the purposes of FRE 408 can necessitate the prohibition of evidence of settlement discussions offered to prove the liability for, invalidity of, or amount of cases or claims related to those cases or claims under negotiation"); *Lo Bosco v. Kure Eng'g Ltd.*, 891 F.Supp. 1035 (D.N.J. 1995) (noting that, "where cases are related, the better view is that Rule 408 may exclude settlement proposals in one from admission into evidence in the other"). Thus, as long as a subsequent claim is related to the dispute that was the subject of settlement negotiations or an offer of compromise, evidence of the prior

settlement negotiations or offer of compromise will be excluded under Rule 408. *See Petruzzi's*, 998 F.2d at 1226-27; *Ciolli*, 625 F.Supp.2d at 286-87; *Lo Bosco*, 891 F.Supp. 1035. The allegations of the Complaint covered by Rule 408 must be stricken under Federal Rule of Civil Procedure 12(f).

2. Avaya's reliance on the "permissible purpose" exception is misplaced.

Avaya argues that the "statements and conduct of SNMP[RI] during the compromise negotiations are asserted for the permissible purpose of establishing SNMP[RI]'s bad faith in conducting the compromise negotiations and terminating the License Agreement." (Resp. Br., D.I. 14, at p. 10.) However, admitting evidence that would otherwise be excluded by Rule 408 is wholly within a court's discretion, *see* Fed. R. Evid. 408 ("The court *may* admit this evidence for another purpose . . . ."), and if there is a question about whether to exclude evidence of settlements or settlement negotiations, courts should exclude the evidence rather than admit it. *See Affiliated Mfrs., Inc v. Aluminum Co. of Am.*, 56, F3d 521, 528 (3d Cir. 1995). Finally, Rule 408 does not provide an exception for "bad faith" and, even if it did, the Complaint does not mention "bad faith" or allege that SNMPRI acted in "bad faith."

Even the cases that Avaya relies upon, only one of which is binding authority, do not support its argument that evidence that would be excluded by Rule 408 is admissible for Avaya's purposes. Each of Avaya's cases involves an intentional act or statement made during settlement negotiations which would have been an independent wrongful act regardless of whether it occurred during settlement negotiations or outside settlement negotiations. *See Arnold v. Wilder*, 657 F.3d 353, 367 (6th Cir. 2011) (admitting an unsigned Covenant Not to Sue as evidence of a prosecutor's malicious criminal prosecution); *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293 (6th Cir. 1997) (admitting an employer's threat to terminate all third shift workers as evidence of an unfair labor practice); *Rader v. Share Builder, Corp.* 772 F.Supp.2d 599, 604-05 (D. Del. 2011) (finding that a

settlement letter could be admissible proof of blackmail but concluding that the letter was not blackmail "in light of the strong and long-standing public policy favoring settlement"); *Carolina Indus. Prods., Inc. v. Learjet, Inc.*, 168 F.Supp.2d 1225, 1228-28 (D. Kan. 2001) (admitting an attorney's misrepresentations during a settlement negotiation as evidence of fraud).

Here, Avaya provides no factual or legal bases for its claims that SNMPRI negotiated in bad faith or that its conduct could constitute a breach of contract, a breach of the implied covenant of good faith and fair dealing, or any other basis of liability. Avaya points to no statement or act by SNMPRI during the settlement discussions that would constitute fraud, misrepresentations, or a threat. In short, Avaya has not alleged or identified one wrongful act or statement by SNMPRI during the settlement discussions that could fall within the "permissible purpose" exception to Rule 408, even if this Court were inclined to exercise its discretion and apply the exception. Therefore, the allegations of the Complaint that refer to settlement negotiations or discussions should be stricken under Rule 12(f) because they are irrelevant under Federal Rule of Evidence 408, and are thus immaterial.

3. The Complaint fails to plead facts that would be admissible under Rule 408 showing that Avaya is entitled to relief under its second or third theories of liability.

Even if Avaya's Complaint somehow managed to state a valid claim for breach of contract or breach of the implied covenant of good faith and fair dealing under Tennessee law, once the immaterial portions of the Complaint are stricken, the Complaint no longer alleges sufficient facts to satisfy Federal Rule of Civil Procedure 8 and therefore fails to states a claim under either of these theories. Accordingly, Avaya's claims for breach of the License Agreement and breach of the implied covenant of good faith and fair dealing should be dismissed pursuant to Rule 12(b)(6).

## II. CONCLUSION

For all the foregoing reasons and the reasons stated in its Motion to Dismiss and/or Strike SNMPRI respectfully moves this Court for an Order dismissing and/or striking the Complaint.

Respectfully submitted this the 24th day of May, 2012.

By: */s/ Karen M. Grivner*

THORP REED & ARMSTRONG, LLP
Karen M. Grivner (4372)
Gregory W. Hauswirth (5679)
824 Market Street, Suite 710
Wilmington, DE 19801
Telephone: (302) 250-4750
Facsimile: (302) 421-9439
Email: kgrivner@thorpreed.com
Email: ghauswirth@thorpreed.com

PERKINS COIE, LLP
Dennis C. Hopkins
30 Rockefeller Plaza, 25th Floor
New York, NY 10112-0015
Telephone: (212) 262-6916
Facsimile: (212) 977-1649
Email: dhopkins@perkinscoie.com

EGERTON MCAFEE ARMISTEAD & DAVIS, P.C.
John L. Wood
900 S. Gay Street, Suite 1400
Knoxville, TN 37902
Telephone: (865) 546-0500
Facsimile: (865) 525-5293
Email: jwood@emlaw.com

*Attorneys for Defendant*
*SNMP Research International, Inc.*