## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVAYA INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 12-191-RGA-SRF |
| | ) |
| SNMP RESEARCH INTERNATIONAL, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATIONS

### I.      INTRODUCTION

Presently before the court in this diversity action for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing are the following motions: (1) defendant SNMP Research International, Inc.'s ("SNMP" or "Defendant") motion to dismiss or transfer based upon lack of personal jurisdiction and improper venue (D.I. 7),[1] filed on March 9, 2012; (2) SNMP's motion to dismiss and/or strike based on failure to state a claim upon which relief can be granted and inclusion of inadmissible evidence (D.I. 8), filed on March 9, 2012; and (3) plaintiff Avaya Inc.'s ("Avaya" or "Plaintiff") motion for a preliminary injunction (D.I. 16), filed on April 16, 2012.  For the following reasons, I recommend that the court deny SNMP's motion to dismiss for lack of personal jurisdiction and improper venue, deny SNMP's motion to dismiss and/or strike for failure to state a claim, and deny Avaya's motion for a preliminary injunction.

---

[1]All citations to docket entries in this Report and Recommendation refer to Civil Action No. 12-191-RGA-SRF unless otherwise noted.

## II.    BACKGROUND

### A.    The Parties

Avaya is  a Delaware corporation with its principal place of business in New Jersey.

Avaya provides business collaboration and communications solutions to international companies

on a global scale. (D.I. 2 at ¶ 1) Avaya employs 18,500 people and reported a total revenue of

$5,547,000,000 for the fiscal year ending September 30, 2011. (D.I. 19 at ¶¶ 6-7)

SNMP is a Tennessee corporation with its principal place of business in Tennessee. (D.I.

2 at ¶ 2) SNMP is a private corporation, with less than ten employees, that licenses and supports

software used in computer communication and network management. (D.I. 9 at ¶¶ 2-4) SNMP's

software is produced at its Knoxville headquarters, and all persons with relevant knowledge of

the development of the software are located at SNMP's Knoxville headquarters. (*Id.* at ¶¶ 11-12)

Over the past five years, SNMP engaged in one transaction in which it sold its products to a

Delaware-based customer for a total price of $1,500. (*Id.* at ¶ 15) SNMP's gross revenues in

2011 were less than $5 million. (D.I. 36 at ¶ 5)

### B.    License Agreement

SNMP entered into License Agreement LDR-C36E on March 14, 1995 (the "License

Agreement"), which was subsequently assigned to Avaya. (D.I. 2, Ex. A) The License

Agreement grants Avaya a the right to use SNMP software in certain products, including

Communication Manager and Gateway 650 and 700 (the "Avaya Red Products"), in exchange

for the payment of royalties on a quarterly basis. (*Id.*) The SNMP software in the Avaya Red

Products controls the flow of communications traffic and ensures that information is routed to

the appropriate recipient. (D.I. 2 at ¶ 10) Avaya has used the SNMP software in the Avaya Red

2

Products for over fifteen years, and its customers include major banks and governmental entities. (*Id.* at ¶ 11)

## C. Accession Agreement

In a December 2009 sale administered by the bankruptcy court in *In re Nortel Networks Inc. et al.*, Case No. 09-10138 (KG) (the "Nortel Bankruptcy"), Avaya acquired software products from Nortel Networks that contained SNMP software. (D.I. 2 at ¶ 13) As part of the acquisition, Avaya and SNMP entered into an agreement (the "Accession Agreement") pursuant to which Avaya agreed to continue shipping products containing SNMP software (the "Avaya Blue Products"), under the same terms as an existing license agreement between SNMP and Nortel Networks, which was dated December 21, 1999. (*Id.* at ¶ 14) The Accession Agreement was extended by the parties by way of seven subsequent amendments through April 30, 2011. (*Id.*) Avaya and SNMP have not been able to negotiate a license agreement to replace the Accession Agreement. On November 3, 2011, SNMP initiated an adversary proceeding (Adv. Proc. No. 11-53454 (KG)) by filing a complaint in the Nortel Bankruptcy. (*Id.* at ¶¶ 15-16)

## D. Procedural History

On November 1, 2011, SNMP sent Avaya a letter advising Avaya that it was in breach of the License Agreement due to an underpayment of royalties, and listed the actions Avaya must take to cure the breach of the License Agreement. (D.I. 15, Ex. B) Avaya contacted SNMP on December 3, 2011 to request a meeting to discuss its purported breach of the License Agreement. (D.I. 2 at ¶ 20) Representatives of Avaya and SNMP met on December 14, 2011 to discuss the resolution of alleged breaches surrounding both the Avaya Red Products and the Avaya Blue Products, and agreed to memorialize the process to resolve the licensing issues in a standstill

3

agreement (the "Standstill Agreement"). (*Id.* at ¶ 21-23)

The parties agreed that upon the signing of the Standstill Agreement, Avaya would pay a royalty fee under the existing License Agreement, which would be deducted from the total amount that Avaya owed SNMP at the end of the process. (*Id.* at ¶ 24) The parties also agreed that SNMP would be granted a reasonable examination of the source code libraries associated with the Avaya Red Software and the Avaya Blue Software to determine the true number of royalty-bearing products that Avaya had shipped. (*Id.* at ¶ 25) Avaya agreed to allow SNMP to conduct audits of Avaya's financial records, and SNMP verbally agreed not to pursue its rights under the License Agreement, terminate the License Agreement, or terminate the stipulation while SNMP and Avaya were conducting good faith negotiations. (*Id.* at ¶¶ 26-27)

On January 6, 2012, SNMP sent a proposed Standstill Agreement to Avaya, memorializing the agreements reached by the parties on December 14, 2011. (*Id.* at ¶ 29) On January 26, 2012, Avaya sent SNMP a revised version of SNMP's proposed Standstill Agreement. (*Id.* at ¶ 30) SNMP sent a letter to Avaya purporting to terminate the License Agreement on February 1, 2012. (*Id.* at ¶ 31, Ex. B)

On February 3, 2012, an Avaya representative spoke with SNMP's founder and proposed that Avaya and SNMP engage in voluntary mediation. (*Id.* at ¶ 33) Representatives from SNMP and Avaya spoke again on February 7, 2012 in an effort to resolve the matters in contention. (*Id.* at ¶¶ 34-36) On February 9, 2012, SNMP sent Avaya a revised version of the Standstill Agreement that reverted to the positions asserted by SNMP before the parties' negotiations and included additional demands. (*Id.* at ¶ 37)

Avaya commenced the instant declaratory judgment action on February 14, 2012, after

negotiations broke down completely.  (*Id.* at ¶ 39)  The parties never executed the Standstill

Agreement, and SNMP and SNMP Research, Inc. filed their complaint for copyright

infringement and breach of contract against Avaya in the Eastern District of Tennessee on March

9, 2012 (the "Tennessee Action").  (D.I. 1; C.A. No. 13-204-RGA-SRF, D.I. 2)  The Delaware

bankruptcy adversary proceeding remains pending.

## III.    DISCUSSION

### A.    Personal Jurisdiction

#### 1.    Legal standard

Federal Rule of Civil Procedure 12(b)(2) directs the court to dismiss a case when it lacks

personal jurisdiction over the defendant.  Typically, determining the existence of personal

jurisdiction requires the court to:  (1) analyze the long-arm statute of the state in which the court

is located; and (2) determine whether the exercise of jurisdiction comports with the Due Process

Clause of the Constitution. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir.

1998).  Delaware state courts interpret Delaware's long-arm statute as "confer[ring] jurisdiction

to the maximum extent possible under the Due Process Clause." *Hercules Inc. v. Leu Trust &*

*Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992).  However, the jurisdictional

analysis "must not be collapsed into a single constitutional inquiry." *Power Integrations, Inc. v.*

*BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 370 n.3 (D. Del. 2008).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of

establishing, by a preponderance of the evidence and with reasonable particularity, the existence

of sufficient minimum contacts between the defendant and the forum to support jurisdiction. *See*

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987); *Time*

*Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). However, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citations omitted). A court is always free to revisit the issue of personal jurisdiction if the facts alleged in support of jurisdiction are later disputed. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

It is well-settled that the requirement of personal jurisdiction is intended to protect a defendant's liberty interests. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "Because the defense is a personal right, it may be obviated by consent or otherwise waived." *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991) (citations omitted). A party may consent to jurisdiction before the initiation of the suit, at the time the suit is brought, or after the suit is underway. *Interpole*, 940 F.2d at 22-24. When personal jurisdiction is established by waiver or consent, the analysis of whether personal jurisdiction exists pursuant to Delaware's long -arm statute and under traditional notions of fair play and substantial justice under the due process clause is unnecessary. *Foster Wheeler Energy Corp. v. Metallgesellschaft AG*, C.A. No. 91-214, 1993 WL 669447, at *1-2 (D. Del. Jan. 4, 1993). A party may consent to personal jurisdiction by instituting another, related suit in the jurisdiction with claims that involve overlapping facts, law, and evidence. *Id.* at *3.

### 2.    Parties' contentions

Avaya does not allege that sufficient minimum contacts exist between SNMP and the forum. Instead, Avaya contends that SNMP consented to the jurisdiction of this court by

6

initiating an adversary proceeding against Avaya in the Nortel Bankruptcy regarding the Accession Agreement. (D.I. 13 at 6) According to Avaya, SNMP's adversary proceeding is not a core bankruptcy proceeding that is required to be brought in connection with the main bankruptcy proceeding, and SNMP chose to sue Avaya in Delaware instead of Tennessee, its home forum. (*Id.*)

In response, SNMP alleges that a party cannot consent to this court's jurisdiction by participating in a different, unrelated case in Delaware. (D.I. 32 at 1) SNMP further contends that it did not willfully select Delaware as the venue for the Nortel Bankruptcy, but rather was required to initiate its adversary proceeding in Delaware because the bankruptcy court retained exclusive jurisdiction to hear all disputes relating to the sale of Nortel's assets to Avaya. (*Id.* at 3) According to SNMP, the court should deny Avaya's request to take jurisdictional discovery because Avaya failed to meet its burden of presenting factual allegations in support of personal jurisdiction. (*Id.* at 3-4)

### 3. Analysis

The parties do not dispute the fact that Avaya has not established either general or specific personal jurisdiction. Rather, the parties' dispute centers on whether SNMP either consented to jurisdiction in Delaware or waived its right to object to Delaware's jurisdiction by commencing an adversary proceeding and filing of a proof of claim in connection with the Nortel Bankruptcy.

SNMP affirmatively invoked the Delaware bankruptcy court's jurisdiction by filing the

7

adversary complaint in the Nortel Bankruptcy.[2] *See Southerland v. Milam*, 187 B.R. 740, 743

(M.D. Fla. 1995) (citing *Horwitz v. Alloy Automotive Co.*, 992 F.2d 100, 103 (7th Cir. 1993))

("[A]ffirmatively invoking the Bankruptcy Court's jurisdiction [by filing an adversary

proceeding] most assuredly supplies whatever consent is necessary."). SNMP also invoked the

Delaware bankruptcy court's jurisdiction by filing proofs of claim in the Nortel Bankruptcy. "It

has long been understood that a party filing a proof of claim in a bankruptcy case subjects itself

to the equitable power of the bankruptcy court and triggers the allowance of claims process." *In

re CitX Corp.*, 302 B.R. 144, 158 (Bankr. E.D. Pa. 2003) (citing *Langenkamp v. Culp*, 498 U.S.

42, 44 (1990)).

Having established that SNMP consented to the jurisdiction of the Delaware bankruptcy

court, the court must next determine whether the adversary proceeding initiated by SNMP is

sufficiently related to the present action to establish consent or waiver in this case.[3] Specifically,

the court must determine whether the claims of both actions involve overlapping facts, law, and

---

[2]SNMP alleges that it did not consent to the jurisdiction of the Delaware bankruptcy court because it was compelled to file its adversary proceeding there due to the Delaware bankruptcy court's retention of exclusive jurisdiction to hear all disputes relating to the sale of Nortel's assets to Avaya. (Nortel Bankruptcy No. 09-10138(KG), D.I. 1514, at ¶ 18) ("This Court retains exclusive jurisdiction to interpret, construe, implement and enforce the terms and provisions of, and to resolve any and all disputes that may arise under or in connection with this Order . . .") However, SNMP filed a preliminary objection to the motion to approve the Sale Order that did not challenge the jurisdictional provision of the proposed Sale Order. (Nortel Bankruptcy No. 09-10138(KG), D.I. 1434)

[3]Although fine distinctions between "waiver" and "consent" have been established, such distinctions are "artificial and unnecessary." *Interpole*, 940 F.2d at 22-23. Regardless of the label, a defendant submits to personal jurisdiction in the forum when it chooses to file suit on claims that involve overlapping facts, law, and evidence, and the lawsuit is logically related to the suit in which the defendant seeks to be dismissed for lack of personal jurisdiction. *See Foster Wheeler*, 1993 WL 669447, at *4.

8

evidence. *See Foster Wheeler*, 1993 WL 669447, at *3. In light of the unique factual circumstances presented in this case, I find that the actions are sufficiently similar to establish SNMP's consent to jurisdiction in this forum.

SNMP affirmatively seeks relief as a plaintiff on certain of its claims against Avaya in the adversary proceeding pending before the Delaware bankruptcy court.[4] *See H.A.S. Protection, Inc. v. Senju Metal Indus. Co., Ltd.*, 2003 WL 23419852, at *3 (E.D. Pa. Dec. 12, 2003) (observing that "a party who chooses to initiate suit as a plaintiff in a forum state thereby waives any objection to personal jurisdiction in a suit lodged against it in the same state, at least in cases where the two suits involve the same subject matter."). The claims in the adversary proceeding are derived from a common nucleus of operative facts regarding Avaya's alleged failure to compensate SNMP for its use of SNMP's software technology in its products. There is substantial overlap between the parties to the actions given the close affiliation between SNMP and SNMP Research, Inc., as noted in the Eastern District of Tennessee's decision on transfer of venue. (C.A. No. 13-204-RGA-SRF, D.I. 49 at 8-9) Both cases set forth causes of action for breach of contract based on violations of the terms of the parties' agreements. (D.I. 2 at ¶¶ 48-52; Adv. Proc. No. 11-53454(KG) at ¶¶ 388-93) Moreover, the parties' communications in connection with the Standstill Agreement demonstrate that the same evidence is at issue in both the adversary proceeding and the present action. (D.I. 37, Ex. D, E) Because similar facts, law, and evidence are at issue in both the adversary proceeding and the present action, a finding of personal jurisdiction over SNMP is warranted. As the Supreme Court has explained,

---

[4]In addition, SNMP admitted at oral argument that it could not "rule out" the possibility of executing on a judgment in Delaware if it were to prevail in the adversary proceeding. (7/30/12 Tr. at 15:8-16)

> The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff.

*Adam v. Saenger*, 303 U.S. 59, 67-68 (1938).

The facts surrounding the parties' negotiations further illustrate the similarities between the proceedings. In the November 1, 2011 letter, SNMP accused Avaya of failing to pay and/or underpaying royalties in connection with the License Agreement. (D.I. 15, Ex. B) Specifically, SNMP alleged that Avaya breached the License Agreement governing the Avaya Red Products and failed to enter into a license agreement for the Avaya Blue Products in violation of the terms of the License Agreement.[5] The November 1, 2011 letter sets forth proposed remedies encompassing both agreements, including a cure proposal for payment of the unpaid royalties and purchase of licenses for any unlicensed uses of SNMP software. The proposed Standstill Agreement, which was sent to Avaya on January 6, 2012, likewise encompassed both the Avaya Red Products and the Avaya Blue Products, outlining certain conditions pursuant to which

---

[5]In its decision on Avaya's motion to transfer venue to Delaware, the Eastern District of Tennessee noted the interrelatedness of the agreements as follows:

> As previously discussed, plaintiffs' breach of contract allegations arose in November 2011 when counsel for SNMPRI sent notice to Avaya of SNMPRI's allegations that Avaya had breached the License Agreement [Doc. 16-6 at 3]. The same letter also states that "SNMPRI has reason to believe that Avaya is using SNMP Software in Avaya products for which Avaya does not have a license. Avaya's unauthorized use of SNMP Software is a breach of the Agreement" [*Id.*]. These allegations are in part what led Avaya to meet with plaintiffs in December 2012 and prompted the negotiations at that meeting and the subsequent exchange of the draft standstill agreements.

*SNMP Research, Inc. v. Avaya, Inc.*, 2013 WL 474846, at *5 (E.D. Tenn. Feb. 7, 2013).

SNMP could conduct a reasonable examination of Avaya's source code libraries. (D.I. 37, Ex. E) Moreover, the Standstill Agreement provided that SNMP would not pursue its rights in either the instant action or the adversary proceeding while negotiations continued. (*Id.*)

SNMP cites the Court of Chancery's decision in *Sprint Nextel Corp. v. iPCS, Inc.*, C.A. No. 3746-VCP, 2008 WL 2737409, at *7 (Del. Ch. July 14, 2008), in support of its contention that the actions are not substantially related. (D.I. 7 at 7-8; D.I. 32 at 1) However, the analysis SNMP cites in support of its argument includes only a discussion of the Delaware long-arm statute. Having already determined that an analysis of the long-arm statute is not necessary in a case involving consent or waiver, this court declines to apply the Court of Chancery's analysis of 10 *Del. C.* § 3104(c) to the issue of whether the adversary proceeding and the instant action are sufficiently similar to establish SNMP's consent to personal jurisdiction. *See Foster Wheeler*, 1993 WL 669447, at *1-2.

For these reasons, I recommend that the court deny the motion to dismiss for lack of personal jurisdiction.[6]

---

[6]The court notes that this case is unique on its facts in that SNMP is presently a plaintiff in this court in the related Tennessee Action, which was transferred to this court and is currently stayed. The Tennessee Action is essentially the inverse of the present declaratory judgment action, and as such, it involves the same facts, legal issues, and evidence, as well as substantial overlap between the parties. SNMP did not choose to commence the Tennessee Action in Delaware, but it cannot now dispute jurisdiction in Delaware as a plaintiff. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970) ("[V]enue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants."); *see also Murray v. Scott*, 176 F. Supp. 2d 1249, 1255 (M.D. Ala. 2001) ("The minimum-contacts concerns inhere when a party is haled into court without its consent upon pain of a default judgment. These concerns are not present when a plaintiff is forced to litigate his case in another forum."). SNMP's presence in Delaware as a plaintiff in two currently pending actions against Avaya, involving Avaya's alleged failure to pay sufficient royalties, illustrates that SNMP is not opposed to availing itself of the Delaware courts.

### B.    Improper Venue

#### 1.    Legal standard

The Federal Rules of Civil Procedure do not contain specific venue provisions or requirements. *See Daughtry v. Family Dollar Stores, Inc.*, 634 F. Supp. 2d 475, 479 (D. Del. 2009). Therefore, the court must determine whether venue is proper in accordance with the appropriate statutes. *Id.* (citing *Albright v. W.L. Gord & Assocs., Inc.*, 2002 WL 1765340, at *3 (D. Del. July 31, 2002)). In diversity cases, venue is generally proper in a judicial district where: (1) any defendant resides; (2) a "substantial part of the events or omissions giving rise to the claim occurred," or a substantial part of the property at issue is situated; or (3) any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b)(1)-(3); *see also AmerisourceBergen Drug Corp. v. Ciolino Pharmacy Wholesale Distribs., LLC*, C.A. No. 10-5114, 2011 WL 2039000, at *1 (E.D. Pa. May 24, 2011). The Third Circuit has held that the defendant bears the burden of proof on a motion to dismiss for improper venue. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). Statutorily specified venue is intended to protect the defendant against the risk that the plaintiff will select an unfair or inconvenient place for trial. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979).

#### 2.    Parties' contentions

In support of its motion to dismiss for improper venue, SNMP contends that the court does not have personal jurisdiction over it, and therefore, it is not a resident of the forum. (D.I. 7 at 9) Moreover, SNMP notes that the events giving rise to the claim did not occur in Delaware, and the action may properly be brought in Tennessee. (*Id.*) In response, Avaya contends that venue is proper because Avaya has established personal jurisdiction over SNMP. (D.I. 13 at 6)

12

### 3. Analysis

For the reasons discussed at § III.A.3, *supra*, I recommend denial of the motion to dismiss

for improper venue. "It would be incongruous to hold that an out-of-state defendant has waived

his jurisdictional defenses by filing suit in Delaware and then find that venue was improper."

*Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*, 857 F. Supp. 2d 489, 501 (D.

Del. 2012) (citing *Larson v. Galliher*, 2007 WL 81930, at *2 (D. Nev. 2007)).

### C. Transfer of Venue

On February 7, 2013, the Eastern District of Tennessee issued a decision granting

defendant Avaya's motion to transfer venue to Delaware in the Tennessee Action based on the

first-filed rule. *SNMP Research, Inc. v. Avaya, Inc.*, 2013 WL 474846 (E.D. Tenn. Feb. 7, 2013).

As part of its ruling, the Eastern District of Tennessee determined that the Tennessee Action and

the present action were substantially similar. *Id.* at *4-7 (concluding that the issues and parties

were substantially similar to those in the matter presently before this court, and judicial comity

would be better served by one court deciding the entire matter between the parties). The same

analysis is applicable to the present action. Therefore, I recommend that this court adopt the

Eastern District of Tennessee's first-filed analysis and find that the interests of judicial economy

weigh strongly in favor of denying SNMP's motion to transfer venue in light of the fact that the

related action has been transferred to this court.

### D. Failure to State a Claim

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint

must contain a "short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the

13

complaint must set forth sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 663. The court "need not accept as true threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.*

Following the Supreme Court's decision in *Iqbal*, district courts have conducted a two-part analysis in determining the sufficiency of the claims. First, the court must separate the factual and legal elements of the claim, accepting the complaint's well-pleaded facts as true and disregarding the legal conclusions. *Iqbal*, 556 U.S. at 663. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664. Second, the court must determine whether the facts alleged in the complaint state a plausible claim by conducting a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

SNMP contends that there is no legal basis for Avaya's first cause of action for a declaratory judgment because the claim does not put SNMP on notice of the grounds for entitlement to relief. (D.I. 8 at 6) According to SNMP, the court cannot modify the License

14

Agreement itself by "declaring" that Avaya's good faith attempts to cure its breaches are sufficient to bar SNMP from exercising the termination provisions of the License Agreement. (*Id.*) With respect to Avaya's causes of action for breach of the License Agreement and breach of the covenant of good faith and fair dealing, SNMP contends that Avaya did not perform its obligations under the License Agreement, and its allegations of SNMP's breach are improperly based on statements made during the compromise negotiations between the parties. (*Id.* at 6-7) SNMP also accuses Avaya of filing its declaratory judgment action in anticipation of SNMP's imminent lawsuit in Tennessee. (D.I. 33 at 6)

In response, Avaya contends that its causes of action arise from SNMP's issuance of a faulty termination notice under the License Agreement, and from SNMP's bad faith conduct during the course of negotiations with Avaya regarding the purported breach. (D.I. 14 at 1) According to Avaya, Tennessee courts ascertain the intention of the parties in resolving contract disputes and apply a "reasonableness" standard. (*Id.* at 11)

At this stage of the proceeding, Avaya sufficiently states causes of action upon which relief can be granted. Avaya does not dispute SNMP's contentions that Avaya failed to pay royalties under the terms of the License Agreement and failed to cure its breach within forty-five days. Avaya does not challenge the fact that SNMP provided a notice of termination. Instead, Avaya contends that the notice of termination is insufficient and invalid. Accepting Avaya's allegations as true, SNMP breached the License Agreement by failing to provide a valid notice of termination to Avaya. For these reasons, I recommend that the court deny SNMP's motion to dismiss for failure to state a claim.

### E.     Motion to Strike

Federal Rule of Civil Procedure 12(f) states that "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike under Rule 12(f) are disfavored. *Fesnak & Assoc's, LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010). "[E]ven where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Id.* (internal quotations omitted).

SNMP's motion to strike is based on its contention that Avaya violated Federal Rule of Evidence 408 by disclosing the events that occurred in connection with the parties' negotiations. (D.I. 8 at 6-9)  Avaya contends that Rule 408 only bars the use of compromise evidence to prove liability for or the invalidity of the claim that was the subject of the compromise, and it is inapplicable when the claim is based upon a wrong that was committed during the course of settlement discussions. (D.I. 14 at 9)  According to Avaya, its claims in the present matter are based on SNMP's bad faith conduct during the negotiations and improper termination of the License Agreement, not on its alleged underpayment of royalties under the License Agreement. (*Id.* at 9-10)  Moreover, Avaya alleges that Rule 408 addresses the admissibility of evidence, not the sufficiency of the pleadings. (*Id.* at 11)

I recommend that the court deny SNMP's motion to strike.  The disputed evidence regarding the parties' negotiations falls within an exception to FRE 408 because it is necessary to demonstrate the bad faith conduct alleged by Avaya. *See Rader v. ShareBuilder Corp.*, 772 F. Supp. 2d 599, 604 (D. Del. 2011) (holding that a complaint may not be dismissed under Federal

Rule of Evidence 408). Moreover, on a motion to dismiss, the court "must take the allegations of the complaint as true – and, in doing so, it does not make decisions as to the admissibility of particular evidence." *Id.* at 605. For these reasons, I recommend that the court deny SNMP's motion to strike.

### F. Preliminary Injunction

#### 1. Legal standard

"The decision to grant or deny . . . injunctive relief is an act of equitable discretion by the district court." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The grant of a preliminary injunction is considered an "extraordinary remedy" that should be granted only in "limited circumstances." *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted). The party moving for injunctive relief must establish: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.* (citation omitted). The movant must establish every element in its favor to avoid denial of a preliminary injunction. *See P.C. Yonkers, Inc. v. Celebrations, the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). An injunction cannot issue in the absence of a showing that the plaintiff is likely to succeed on the merits and will suffer irreparable harm if relief is not granted. *See McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523 (3d Cir. 1994).

### 2.    Analysis

#### (a)    Likelihood of success on the merits

To secure preliminary relief, the moving party has the burden of proving that it has a

reasonable probability of ultimately succeeding on the merits of the claim. *Coca-Cola Bottling*

*Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 668 F. Supp. 906, 915 (D. Del. 1987) (citing *In re*

*Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1147 (3d Cir. 1982)). In the present matter,

Avaya must demonstrate that it has a reasonable likelihood of success on the merits of its breach

of contract and breach of the implied covenant of good faith and fair dealing claims under

Tennessee law, which governs the interpretation of the License Agreement. (D.I. 2, Ex. A at ¶

32) "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of

the parties." *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009) (citing *Allstate Ins. Co. v.*

*Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). First, the court determines the parties' intent by

examining the plain and ordinary meaning of the written words that are "contained within the

four corners of the contract." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (citing

*Kiser v. Wolfe*, 353 S.W.3d 741, 747 (Tenn. 2011)). If the terms of a contract are ambiguous, the

court must apply other rules of construction to ascertain the parties' intent. *Planters Gin Co. v.*

*Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). "In Tennessee, the

common law imposes a duty of good faith in the performance of contracts." *Wallace v. Nat'l*

*Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996).

In support of its motion for a preliminary injunction, Avaya contends that it will likely

prevail on its claims for breach of the License Agreement and breach of the obligation of good

faith and fair dealing because Tennessee law applies a "reasonableness" standard to evaluate a

party's performance of its contractual obligations, and Avaya reasonably performed its obligations by offering to cure any purported breaches within the time frame set forth in the contract. (D.I. 17 at 10-11) Avaya alleges that SNMP rejected its repeated offers to cure any deficiencies in the royalty fees and instead breached the License Agreement by attempting to terminate the License Agreement. (*Id.* at 12)

In response, SNMP contends that there is no likelihood that Avaya will prevail on the merits because Avaya failed to accurately report sales or pay royalties for years and was notified of its default. (D.I. 34 at 15) According to Avaya, SNMP failed to cure its default within 45 days, and instead attempted to improperly bargain with Avaya and to impose new conditions. (*Id.*) SNMP contends that it only took action to terminate Avaya's license and redistribution rights after ninety days had passed, during which time Avaya never made a payment to cure the default. (*Id.*)

At this stage of the proceedings, Avaya has not shown that it has a reasonable likelihood of success on the merits. The License Agreement provides as follows:

> If Licensee [Avaya] fails to observe, keep, or perform any payment provisions of this License Agreement required to be observed, kept, or performed by Licensee and does not correct such conditions within forty five (45) days after receiving written notice thereof from SNMP, SNMP shall have the right to exercise any one or more of the following remedies [including certain termination rights].

(D.I. 2, Ex. B at § 18(b)) It is undisputed that SNMP provided written notice of the default. (D.I. 2 at ¶ 18)

Furthermore, Avaya does not dispute that, to the extent any royalties may have been unintentionally underreported and, consequently, not paid to SNMP, then the amount of such royalties are at least $510,000. (D.I. 52 at ¶ 5) Avaya cannot obtain injunctive relief if the court

19

should find that underpayment or withholding of royalty payments is in breach of the License Agreement.

### (b)     Irreparable harm

"The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000). Economic harm alone is insufficient; instead, "the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Types of irreparable injury include loss of control of reputation, loss of trade, and loss of good will. *Kos Pharms.*, 369 F.3d at 726 (internal quotation marks omitted). However, in an action for breach of contract, a plaintiff "cannot convert monetary harm into irreparable harm simply by claiming that the breach of contract has prevented it from performing contracts with others and that this subsequent failure to perform will harm the plaintiff's reputation." *Bennington Foods LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176, 178-79 (3d Cir. 2008).

Avaya contends that it will suffer immediate and irreparable harm absent entry of a preliminary injunction against SNMP in the form of: (1) damage to its customer relationships and commercial goodwill due to its inability to provide and upgrade Avaya Red Products; (2) damage to its share of the communications market; and (3) copyright and patent litigation initiated against it by SNMP. (D.I. 17 at 13-14) Avaya alleges that it will be unable to provide essential services in the event that the License Agreement is terminated, and it will have no way to make itself whole again if it ultimately prevails. (*Id.* at 15)

20

SNMP responds that Avaya will not suffer irreparable harm that cannot be compensated with monetary damages for breach of contract. (D.I. 34 at 16) According to SNMP, there is no competent evidence that Avaya will actually sustain commercial harm to its reputation or market share, as shown by the fact that such effects of the termination would already be felt. (*Id.* at 17) SNMP contends that it has not moved to enjoin Avaya from distributing the Red License Products, and Avaya's customers are not in danger of being precluded from using the products they already acquired from Avaya. (*Id.* at 18) SNMP also points out that Avaya's customers are free to purchase the products from other non-infringing sellers. (*Id.*) Finally, SNMP contends that there is no evidence to support Avaya's claim for recovery of damages in excess of SNMP's ability to pay. (*Id.*)

Avaya has not satisfied its burden of establishing irreparable harm. The concerns expressed in the affidavit of Avaya employee Michel Cote are speculative, and he supplies no factual basis for his assertions. (D.I. 52) Avaya has not shown damage to reputation, loss of customers, or loss of market share in support of its motion, which undermines Avaya's assertion that it experienced commercial and financial hardships as a result of SNMP's termination of the License Agreement. Moreover, Avaya's contention that the potential loss of good will constitutes irreparable harm is contradicted by Third Circuit precedent,[7] and as such, the court declines to follow Avaya's authority from the Southern District of New York.[8]

---

[7]*See Bennington Foods LLC*, 528 F.3d at 178-79 (3d Cir. 2008).

[8]Avaya cites *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010) in support of its contention that a company's loss of reputation, good will, and business opportunities from a breach of contract can constitute irreparable harm. This is inconsistent with the Third Circuit's approach. Avaya makes no attempt to distinguish the controlling authority cited by SNMP.

The court further notes that SNMP has not moved to enjoin Avaya from distributing its software, and has not sued or threatened to sue Avaya's customers.  (D.I. 37 at ¶ 11)

### (c)   Balance of hardships[9]

"In assessing the balance of the hardships factor, the court must balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted." *Neology, Inc. v. Fed. Signal Corp.*, C.A. No. 11-672-LPS-MPT, 2012 WL 2308202, at *30 (D. Del. June 18, 2012) (internal quotations omitted). "We have recognized that [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Kos Pharms.*, 369 F.3d at 729.

Avaya contends that the balance of hardships favors the imposition of an injunction because otherwise, Avaya and its customers face a high risk of irreparable harm.  (D.I. 17 at 17) According to Avaya, the only harm SNMP faces is the non-payment of royalties under the License Agreement, which Avaya has offered to pay on numerous occasions.  (*Id.*)

In response, SNMP contends that an injunction would essentially eviscerate SNMP's rights under the License Agreement in the event of Avaya's default, allow Avaya to commercially exploit the software without paying royalties, and prevent SNMP from enforcing its intellectual property rights.  (D.I. 34 at 19)  SNMP notes that the amount Avaya owes to SNMP is more significant to SNMP given a relative comparison of the size and revenues of the

---

[9]"If either or both of the fundamental requirements - likelihood of success on the merits and probability of irreparable harm if relief is not granted - are absent, an injunction cannot issue." *Capriotti's Sandwich Shop*, 857 F. Supp. 2d at 499 (citing *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523 (3d Cir. 1994)).  If the court adopts the recommendations on the first two prongs of the analysis, there is no need to reach the balance of hardships and public interest inquiries.

companies. (*Id.*) Moreover, SNMP emphasizes the fact that Avaya's situation was caused by its own failure to pay the royalties it owed to SNMP. (*Id.*)

The balance of hardships favors SNMP in these circumstances. The court could reasonably find that Avaya underpaid or failed to pay the royalties due to SNMP. SNMP would be left with little recourse if Avaya's request for an injunction were granted. Specifically, SNMP would be prevented from exercising its rights under the License Agreement, while Avaya would continue receiving the commercial and financial benefits resulting from distribution of the Avaya Red Products. In contrast, Avaya may pursue a claim for money damages if the injunction is denied, and its customers are not precluded from using the products they have already acquired from Avaya.

### (d)     Public interest

"[I]f a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). The inverse is also true. Therefore, if a plaintiff fails to demonstrate either a likelihood of success on the merits or irreparable injury, an injunction cannot issue. *See Capriotti's Sandwich Shop*, 857 F. Supp. 2d at 499 (citing *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523 (3d Cir. 1994)).

In support of its motion for a preliminary injunction, Avaya contends that the public interest favors the entry of an injunction against SNMP because the Avaya Red Products are critical to Avaya's customers, and the failure to enter an injunction would result in a disruption of services to those customers. (D.I. 17 at 17-18)  Avaya contends that the public interest in

enforcing contract rights includes the protection of licensees from bad faith attempts by licensors to improperly leverage alleged failures to cure to obtain commercially unreasonable concessions. (D.I. 43 at 8)  In response, SNMP contends that the public interest favors protection of SNMP's contract and intellectual property rights.  (D.I. 34 at 19)  According to SNMP, Avaya should not be permitted to breach the License Agreement by not paying royalties without accounting for its breach.  (*Id.*)

For the reasons previously stated, the public interest factors weigh in favor of SNMP. Presently, there is no evidence before the court suggesting that service to Avaya's customers has been disrupted.  In contrast, the public interest favors protection of SNMP's intellectual property rights and its contractual agreements.

#### (e)     Unclean hands

The doctrine of unclean hands applies when "(1) a party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to the matter in issue (4) that injures the other party (5) and affects the balance of equities between the litigants." *Sun Microsys., Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 410 (D. Del. July 1, 2009) (quoting *Castle v. Cohen*, 676 F. Supp. 620, 627 (E.D. Pa. 1987)) (internal quotations omitted).  The inequitable conduct alleged "must have an immediate and necessary relationship to the equity which [the plaintiff] seeks to obtain in the matter in litigation." *Blanchette v. Providence & Worcester Co.*, 428 F. Supp. 347, 357 (D. Del. 1977) (citation omitted). Misconduct that is unrelated to the claim does not constitute unclean hands. *See Sun Microsys.*, 630 F. Supp. 2d at 410.

SNMP contends that Avaya is not entitled to equitable relief because it has unclean

24

hands. (D.I. 34 at 12)  According to SNMP, Avaya disregarded the Notice of Default and continued to sell infringing products without paying royalties, and Avaya's false reports and failure to pay appropriate royalties constitute breaches under the License Agreement.  (*Id.* at 13-14)  Moreover, SNMP contends that Avaya has offered to pay only a portion of the debt it rightfully owes in exchange for complete relief from liability for its actions.  (*Id.* at 14)

In response, Avaya contends that it has not engaged in bad faith conduct and was unaware of any alleged under-reporting of royalties to SNMP until November 2011, after which Avaya attempted to cure any alleged breaches.  (D.I. 43 at 1)  According to Avaya, SNMP made demands above and beyond seeking payment of the amounts purportedly owed that were outside the terms of the License Agreement.  (*Id.* at 3)  Avaya contends that it made an offer of judgment[10] to SNMP contemporaneously with the filing of the preliminary injunction motion, and SNMP again refused Avaya's offer.  (*Id.* at 4)

As previously discussed, the basic criteria for granting a preliminary injunction have not been satisfied in the present matter.  Therefore, it is not necessary for the court to make a finding as to whether Avaya is not entitled to equitable relief based on the unclean hands doctrine.  To the extent that SNMP claims Avaya is improperly withholding royalties and its conduct triggered the termination of the License Agreement, such arguments have been addressed in the preceding sections.

---

[10]At this juncture, I recommend that it is premature and unnecessary to make any findings concerning Avaya's offer of judgment pursuant to Federal Rule of Civil Procedure 68.

## V.   CONCLUSION

For the foregoing reasons, I recommend that the court deny SNMP's motion to dismiss for lack of personal jurisdiction, deny SNMP's motion to dismiss or transfer for improper venue, deny SNMP's motion for failure to state a claim, deny SNMP's motion to strike, and deny Avaya's motion for a preliminary injunction.

Because this Report and Recommendation may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Report and Recommendation. Any such redacted version shall be submitted no later than June 13, 2013 for review by the court. The court will subsequently issue a publicly-available version of its Report and Recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order In Non Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: June 6, 2013

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

26