**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AVAYA INC., | : | |
| | : | |
| Plaintiff, | : | C.A. No. 12-191-RGA-SRF |
| | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| SNMP RESEARCH, INC., et al., | : | |
| | : | |
| | : | **<u>PUBLIC VERSION</u>** |
| Defendant. | : | |
| | : | |

## <u>AVAYA INC.'S OBJECTIONS TO THE REPORT AND RECOMMENDATION</u>

Dated: June 24, 2013

**DLA PIPER LLP (US)**
Denise S. Kraft (I.D. No. 2778)
Aleine Porterfield (I.D. No. 5053)
919 N. Market Street, Suite 1500
Wilmington, DE  19801
Telephone:  (302) 468-5700
Facsimile:   (302) 778-7917
denise.kraft@dlapiper.com
aleine.porterfield@dlapiper.com

Of Counsel:

*Attorneys for Plaintiff Avaya Inc.*

Paul R. Gupta
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, NY 10020-1104
Telephone: (212) 335-4825
Facsimile:  (212) 884-8592
paul.gupta@dlapiper.com

# TABLE OF CONTENTS

**PAGE**

I.  The Report Erred by Holding that Avaya Did Not Show Irreparable Harm By the Threat of Harm to Avaya's Customers and Public Safety .......................................3

II. The Report Erred by Holding that Avaya Did Not Show Irreparable Harm By the Loss of Avaya's Goodwill................................................................................6

III. The Report Mistakenly Assumes that Granting Avaya an Injunction Would Negate Avaya's Obligation to Pay SNMP License Fees ........................................9

IV. The Report Fails to Properly Address SNMP's Termination is Effective..........................9

V.  Conclusion .................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*2660 Woodley Road Joint Venture v. ITT Sheraton Corp.*,
   1998 WL 1469541 (D. Del. Feb. 4, 1998) ...................................................................7

*Bank of Montreal v. SF Weekly, LP*,
   2010 WL 2266015 (D. Del. June 7, 2010) ...................................................................3

*Bennington Foods LLC v. St. Croix Renaissance, Group, LLP*,
   528 F.3d 176 (3d Cir. 2008).................................................................................7, 8

*Bergen Drug Co. v. Parke, Davis & Co.*,
   307 F.2d 725 (3d. Cir. 1962)................................................................................5, 7

*Byrne v. Calastro*,
   205 Fed. Appx. 10 (3d Cir. 2006) ...........................................................................6

*Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*,
   857 F. Supp. 2d 489 (D. Del. 2012) ........................................................................3

*Fitzgerald v. Mountain Laurel Racing, Inc.*,
   607 F.2d 589 (3d Cir.1979).....................................................................................8

*Howmedica Osteonics v. Zimmer Inc.*,
   2012 WL 477624 (3d Cir. Feb. 15, 2012)..................................................................7

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
   882 F.2d 797 (3d Cir. 1989)....................................................................................7

*Kos Pharmaceuticals, Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004).........................................................................3, 4, 7, 8

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*,
   562 F.3d 553(3d Cir. 2009)......................................................................................8

*Liveware Publ'g v. Best Software Inc.*,
   125 Fed. App'x 428 (3d Cir. 2005)..........................................................................5

*MIG Investments LLC v. Aetrex Worldwide, Inc.*,
   852 F. Supp. 2d 493 (D. Del. 2012).........................................................................6

*Mobilificio San Giacomo S.p.A. v. Stoffi*,
   1997 WL 699299 (D. Del. Sept. 24, 1997)................................................................7

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
   920 F.2d 187 (3d Cir.1990)..............................................................................4, 6, 7, 9

*Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*,
   143 F.3d 800 (3d Cir. 1998).....................................................................................8, 9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   2008 WL 5210843 (D. Del. Dec. 12, 2008)..................................................................7

*Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*,
   754 F. Supp. 2d 616 (S.D.N.Y. 2010).........................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72 .............................................................................................................3

Fed. R. Civ. P. Rule 68 ....................................................................................................2

Fed. R. Evid. Rule 408......................................................................................................2

Avaya Inc. ("Avaya") objects to the Magistrate Judge's June 6, 2013 Report and Recommendation (the "Report") regarding its disposition of Avaya's Motion for Preliminary Injunction. D.I. 16; D.I. 17, Opening Brief herein as "OB." Through that motion, Avaya sought an order granting a preliminary injunction enjoining defendant SNMP Research International, Inc. ("SNMP") from terminating a license agreement between the two parties designated LDR-636E effective as of March 14, 1995, as amended (the "License Agreement"). Avaya also sought a declaration that SNMP attempt to terminate the License Agreement was invalid. D.I. 2, Complaint. Avaya requests that this Court correct the legal errors and remand the matter to the Magistrate Judge or remand the entire matter to the Magistrate Judge.

The key issues in this case relate to the purported termination of the right of Avaya to distribute to its customers one component of two complex telecommunications products. That component is the subject of a license agreement between Avaya and SNMP. OB at 4. Those products—which are the cornerstones of generating billions of dollars for Avaya—are used in mission critical systems in the public and private sectors, including:

- 
- 
- 
- 
- 
- 
- major banking and news organizations including
- hospitals;
- police departments; and
- fire departments.

*Id.* (citing Complaint ¶11); *id.* at 14 (citing D.I. 19, "Cote Decl." ¶¶2-5.)[1]

---

[1] Michel Cote, an Avaya employee, manages all third-party software licensing for Avaya products. Cote Decl. ¶1. Mr. Cote has held this position since Avaya acquired the Nortel Enterprise System division in 2009. *Id.* Before the Avaya's acquisition, he held the same position managing third-party licensing at

The License Agreement contains a cure provision that permits Avaya "to correct such conditions within forty five (45) days after receiving written notice thereof from SNMP", in the event of an alleged breach of the License Agreement. SNMP failed to honor that provision. OB at 6; Complaint, Ex. A, License Agreement ¶18(b). Avaya does not dispute that it inadvertently failed to pay SNMP certain royalties, and has offered time and again to pay those royalties. OB at 8-9. Avaya has even made a Rule 68 offer of judgment in the amount of $435,762, and further offered to engage with SNMP in discussions or mediation if SNMP believes that number is inadequate. However, SNMP has been unwilling to engage with Avaya, and Avaya has continuously maintained that SNMP is acting in bad faith.

In the Report, the Magistrate Judge accepted many of Avaya's positions, after receiving hundreds of pages of briefs and declarations and conducting a three-hour hearing. The Magistrate Judge ruled in favor of Avaya on SNMP's motions to dismiss or transfer the case, finding—among other things—that this Court has jurisdiction over SNMP and that Avaya adequately pled that "SNMP breached the License Agreement by failing to provide a valid notice of termination to Avaya." Report at 11, 15. The Magistrate Judge agreed with Avaya on SNMP's motion to strike material from our complaint, regarding SNMP's allegation that the material is allegedly covered by Rule 408. *Id.* at 16. Notably, the Report states that: "The disputed evidence regarding the parties' negotiations falls within an exception to FRE 408 because it is necessary to demonstrate the bad faith conduct alleged by Avaya." *Id.* (citation omitted, emphasis added.)

The Magistrate Judge further noted that SNMP has not sought an injunction or threatened Avaya's customers. Report at 22. However, the Magistrate Judge erred in holding that Avaya is not entitled to an injunction regarding the notice of termination. The Magistrate Judge stated that

---

Nortel for ten years. *Id.* He is uniquely knowledgeable about the potential impact of SNMP's threatened termination of the License Agreement.

2

the harm caused by SNMP's actions—to Avaya's customers (and the public interest) and to Avaya itself—is prospective.  However, such prospective harm supports the request for an injunction.

Avaya objects to the Report's error in not holding that Avaya was irreparably harmed by the threat of harm to Avaya's customers and public safety, in not holding that Avaya was irreparably harmed by the threat of the loss of Avaya's goodwill, and related errors regarding Avaya's intent to fulfill its payment obligations and Avaya's and its customers' strategic need for guidance on SNMP's alleged termination of the License Agreement.

In consideration of judicial resources, Avaya respectfully submits that its objections could be resolved by this Court remedying the legal errors and then remanding the matter to the Magistrate Judge to receive further evidence. This disposition is particularly suitable here because a motion for a preliminary injunction is heavily factual and the Report suggested that it would require further factual support to grant an injunction. *See, e.g.,* Report at 21. This Court has the authority to resolve the errors in this economical manner. The Report was filed pursuant to Fed. R. Civ. P. 72(b)(1). Report at 26. Therefore, upon the district judge's *de novo* review of the Report filed under Fed. R. Civ. P. 72(b)(1), "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." F.C.R.P. 72(b)(3); *see also Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*, 857 F. Supp. 2d 489, 502 (D. Del. 2012); *Bank of Montreal v. SF Weekly, LP*, 2010 WL 2266015, at *2 (D. Del. June 7, 2010).

I.     **The Report Erred by Holding that Avaya Did Not Show Irreparable Harm By the Threat of Harm to Avaya's Customers and Public Safety.**

A preliminary injunction should issue when there is a threat of irreparable harm and not after the irreparable harm has occurred. *See Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d

700, 708 (3d Cir. 2004) ("[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties.") (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir.1990)). Otherwise, the harm is done and the injunction is moot.

While the Magistrate Judge appears to rely heavily on the fact that SNMP has not sought an injunction against Avaya, nor threatened Avaya's customers, it is also true that the threat of harm continues because the parties remain uncertain about whether SNMP's letter of termination was effective. *See* Report at 23.

Avaya's customers provide indispensable services throughout the world, and include providers of vital public services such as hospitals, police and fire departments, and other governmental agencies. OB at 15, 17-18. If SNMP's termination of the License Agreement is effective, SNMP's actions will irreparably harm Avaya's ability to serve its customers, including those first responders, hospitals, and international banking institutions that rely on Avaya's communication systems. *Id.* at 15 (citing Cote Decl. ¶¶32-37). Those customers' ability to upgrade their systems to support services, such as emergency call routing is in jeopardy. Cote Decl. ¶35. That irreparable harm will reverberate through Avaya's customers and their consumers. OB at 15 (citing Cote Decl. ¶¶32-37). SNMP's threatened actions endanger the public in innumerable ways from banking, news media, government, to healthcare and beyond. *Id.* at 4-5. Though the Report was correct to note that Avaya's customers have not yet suffered disruption in service (Report at 24), the threat of service disruption is harmful. *See* Cote Decl. ¶¶33-34.

This substantial uncertainty over the communications services for these important public and private entities is a cognizable harm and gives SNMP undue power and leverage. *See* OB at

15 (citing *Liveware Publ'g v. Best Software Inc.*, 125 Fed. App'x 428, 433 (3d Cir. 2005) (affirming lower court's entry of injunction where enjoined party's actions caused irreparable harm to business relationships with business partners and end-users); RB at 6-7 (*citing Bergen Drug Co. v. Parke, Davis & Co.*, 307 F.2d 725, 726 (3d. Cir. 1962) (recognizing that enjoining a party from terminating a contract that would sever supplies to the plaintiff's customers would constitute irreparable harm by "negatively impact[ing] [plaintiff's] goodwill and business reputation … [plaintiff's] customers [would] have no choice but to resort to using a substitute product to meet their needs—possibly resulting in a permanent loss of business."); *see generally* Cote Decl. SNMP understands this immeasurable, nonmonetary potential injury and has made a host of commercially unreasonable demands in order to coerce Avaya to negotiate at a disadvantage to maintain the *status quo* with the License Agreement. *See* OB at 8-9. It is a public interest to protect licensees, like Avaya, from abusive leveraging tactics by licensors, especially when the licensed products are used to provide critical public services. *See* RB at 8. In contrast, SNMP's alleged damages for underpayment of royalties is by its very nature a mere monetary calculation. *See* OB at 15; D.I. 52, herein "Supp. Cote Decl."

Though the Report briefly refers in its factual findings to Avaya's primary Declaration of Michel Cote, which provides great detail about the imminent threat of irreparable harm that Avaya and its customers would face if SNMP were permitted to carry out its threat, there is a disconnect with the Report's analysis of irreparable harm. In fact, when the Report claims that the Declaration of Avaya employee Michel Cote fails to satisfy Avaya's burden to show irreparable harm, the Report only cites to the Supplemental Declaration of Michel Cote, which was limited to supplement potential royalty numbers. *See* Report at 21 (citing D.I. 52, Supp. Cote Decl.); *see also* D.I. 50, Transcript of Court Teleconference, dated July 16, 2012.

The Cote Declaration warns that if SNMP is permitted to improperly terminate the License Agreement, Avaya will not be able to provide its services to its customers and will lose market share to its competitors because those business collaboration and communications solutions services are mission critical for several government agencies and healthcare providers. OB at 14 (citing Cote Decl. ¶¶25-28). A critical component to Avaya's products is the ability to update and upgrade its software to keep pace with the evolving developments in the communications and software industry and the changing needs of its customers. OB at 16-17 (citing Cote Decl. ¶¶29-37). The Cote Declaration cautioned that even if Avaya could re-design its products to avoid use of SNMP's software, the lengthy re-design process would irreparably damage its market share and goodwill because it could not provide an adequate product in the interim. *Id.* at 14 (citing Cote Decl. ¶¶21, 25-28).

## II. The Report Erred by Holding that Avaya Did Not Show Irreparable Harm By the Threat of the Loss of Avaya's Goodwill.

SNMP's threatened termination of the License Agreement threatens Avaya's ability to provide core services to key government agencies and significant pillars of our economy such as international banking institutions. *See* Cote Decl. ¶¶ 18-36. The inability to maintain updated products will irreparably harm Avaya's goodwill with these essential customers. *Id.* The impact currently impedes Avaya's ability to upgrade software and the effect will last indefinitely because several of those customers have long procurement processes. *Id.* Without clarification of whether SNMP's improper attempt to terminate the License Agreement was effective, there is a serious threat of Avaya losing goodwill in the market.

The potential loss of goodwill can create irreparable harm.[2] The Third Circuit in

---

[2] *See, e.g., MIG Investments LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 513 (D. Del. 2012) ("Damage to a company's good will and reputation can constitute irreparable harm.") (citing *Byrne v. Calastro*, 205 Fed. Appx. 10, 16 (3d Cir. 2006) (same) and *Opticians Assoc. of Am. v. Indep. Opticians of*

*Bennington Foods LLC v. St. Croix Renaissance, Group, LLP* found that the plaintiff failed to

show irreparable harm by a loss of goodwill. 528 F.3d 176, 179 (3d Cir. 2008). The court did not

however alter the law that a potential loss of goodwill could be considered irreparable harm.

Thus, the Report erred in regard to the irreparable harm factor of the preliminary injunction

analysis by holding that Avaya's evidence of its potential loss of goodwill is not irreparable

harm. *See* Report at 20-21 (relying on *Bennington*, 528 F.3d at 179.)

First, the Report misinterpreted the Third Circuit's decision in *Bennington* and the

multitude of controlling cases—including *Kos*, which the Report also cited— that found that a

potential loss of goodwill can result in irreparable harm.  In doing so, the Report also mistakenly

ignored the Delaware precedents that Avaya cites. *Cf.* Report at 21 n.8 *w.* Report at 20 (citing

*Instant Air Freight*, 882 F.2d at 801 (demonstrating *potential* harm)); OB at *13.[3]

Avaya agrees that a party "cannot convert monetary harm into irreparable harm simply

by claiming that the breach of contract has prevented it from performing contracts with others

and that this subsequent failure to perform will harm the plaintiff's reputation." *See* Report at 20

(quoting *Bennington*, 528 F.3d at 178-79); AB at 16 (same). Avaya, unlike the plaintiff in

*Bennington*, however, presented evidence that it would suffer irreparable harm absent a

---

*Am.*, 920 F.2d 187, 196 (3d Cir. 1990) ("*Potential* damage to reputation constitutes irreparable injury for the purposes of granting a preliminary injunction…") (emphasis added)); *Mobilificio San Giacomo S.p.A. v. Stoffi*, 1997 WL 699299, at *7-8 (D. Del. Sept. 24, 1997); *see also* Report at 20 (citing *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) ("the plaintiff must demonstrate *potential* harm which cannot be redressed by a legal or an equitable remedy following trial") (emphasis added)); *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (recognizing that the loss of goodwill can be an irreparable harm)).
[3] Citing *Howmedica Osteonics v. Zimmer Inc.*, 2012 WL 477624, at *2 (3d Cir. Feb. 15, 2012); *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2008 WL 5210843, at *1 (D. Del. Dec. 12, 2008); *2660 Woodley Road Joint Venture v. ITT Sheraton Corp.*, 1998 WL 1469541, at *6 (D. Del. Feb. 4, 1998)); *and* RB at *6 (citing *Bergen Drug Co. v. Parke, Davis & Co.*, 307 F.2d 725, 726 (3d Cir. 1962)); *see also* RB at *6 (citing *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010) (consistent with the legal precedent in this Court and providing a descriptively helpful, similar factual analysis to Avaya).

preliminary injunction that could not be compensated adequately by monetary compensation alone. *See generally* Cote Decl.; Section I *supra*. *Bennington* represented a breach of contract action in which the harm to the plaintiff would be indirectly impacted by the defendant's actions and could be remedied by monetary damages. *Bennington Foods LLC v. St. Croix Renaissance, Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008).[4]

In addition to the difference in the monetary relief in *Bennington* and the non-monetary relief sought by Avaya, the plaintiff in *Bennington* failed to show the impact on its third party relations. *Bennington*, 528 F.3d at 179. Conversely, the Cote Declaration provides ample information regarding the potential impact on its customers if SNMP is not enjoined. *See, e.g.*, Cote Decl. ¶¶32-36.

The *Bennington* court distinguished two other cases from its court because the movants in those cases showed a direct harm inflicted on them by the other party's actions that could not be cured by monetary damages alone. *Id.* at 179-180 (citing *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800 (3d Cir. 1998) and *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589 (3d Cir.1979)). In both *Pappan* and *Fitzgerald*, the Third Circuit found that the loss of goodwill created the irreparable harm. *Id.* In affirming the decision to grant a preliminary injunction, the Third Circuit in *Fitzgerald* recognized the "*possibility* of irreparable injury 'to [the plaintiff's] business and reputation'...." 607 F.2d at 604 (emphasis added). The court affirmed this bedrock principle that the loss of goodwill can create irreparable harm in *Pappan*

---

[4] Similarly, in *Liberty Lincoln-Mercury*, the Third Circuit reiterated that a party could not obtain an injunction when monetary damages would suffice. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553(3d Cir. 2009). The court distinguished *Kos*, in which the aggrieved party sought nonmonetary damages, and aligned with *Bennington*'s factual underpinnings. *Id.* at 556-57 (citing *Kos*, 369 F.3d at 708 and *Bennington*, 528 F.3d at 179). This distinction draws out the subtle error in the Report's contention that the Third Circuit disavowed the principle that potential loss of goodwill could result in irreparable harm. *See* Report at 21 and n.8. The concern of whether a loss of goodwill will create irreparable harm that can be enjoined is not determined by the type of action (such as this breach of contract action), but by whether the relief required can be monetized, among other factors.

by citing *Opticians*—one of the Third Circuit cases upon which Avaya relied. 143 F.3d at 805 (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d. Cir. 1990)); *see also* OB at 13.[5]

Further, if SNMP terminates the License Agreement, the Cote Declaration explains that Avaya's goodwill with its customers could be irreparable harmed because the customers could view the Avaya products as "tainted" and a target for further disruptive litigation. Cote Decl. ¶20. Avaya competes in a highly competitive market, in which its key competitors would seize on this loss of goodwill and momentum of fleeing customers. *Id.* at ¶¶20, 26.

Therefore, Avaya objects to the Report's error that the Third Circuit cannot find potential loss of goodwill can create irreparable harm and factual error that Avaya did not show sufficient evidence of its damages if SNMP were permitted to carry out its threat.

**III. The Report Mistakenly Assumes that Granting Avaya an Injunction Would Negate Avaya's Obligation to Pay SNMP License Fees.**

The Magistrate Judge understood that SNMP was seeking an unfair advantage, *see* Court Transcript, dated July 30, 2012, "Tr." at 101:9-23, yet, the Report found that "SNMP would be left with little recourse if Avaya's request for an injunction were granted." Report at 23. Avaya simply seeks to preserve the status quo to avoid an unnecessary and enormous hardship while it tries to pay SNMP for any allegedly, unintentional underpaid royalties. SNMP muddies the balance of hardships by claiming that it might not receive license fees. The Report erred in failing to recognize that Avaya stands ready to pay appropriate fees.

**IV. The Report Fails to Properly Address SNMP's Termination is Effective.**

Avaya's products are deeply embedded in key government agencies and other highly strategic entities. Many of Avaya's customers, specifically its government customers, have long

---

[5] The Report's reference that Avaya relies on New York law and fails to articulate controlling Third Circuit law is misplaced.

and complicated procurement and testing procedures so those customers would be without critical Avaya services during their replacement phase and then Avaya would not be able to recapture those customers. Cote Decl. ¶33. Not only would the re-design process for Avaya be excruciatingly long and devastating to its business, but its customers would be faced with a Hobbesian dilemma of continuing to use questionably unlicensed products or start the long procurement process with a Avaya competitor. Tr. at 85:5-86:21. Avaya's customers are in need of guidance about the status of SNMP's alleged termination of the License Agreement because they will need to plan for any potential replacement. *See* Cote Decl. ¶33.

V.   **Conclusion.**

Avaya objects to the Report for the foregoing reasons. Therefore, Avaya requests that this Court either enjoin SNMP from terminating the License Agreement or remand to the Magistrate Judge to allow Avaya to supplement the record.

Dated: June 24, 2013

**DLA PIPER LLP (US)**

*Denise S. Kraft*
Denise S. Kraft (I.D. No. 2778)
Aleine Porterfield (I.D. No. 5053)
919 N. Market Street, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 468-5700
Facsimile:   (302) 778-7917
denise.kraft@dlapiper.com
aleine.porterfield@dlapiper.com

Of Counsel:

Paul R. Gupta
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, NY 10020-1104
Telephone: (212) 335-4825
Facsimile:  (212) 884-8592
paul.gupta@dlapiper.com

*Attorneys for Plaintiff Avaya Inc.*

**<u>Certification Pursuant to Standing Order Relating to  Utilization of Magistrate Judge</u>**

Pursuant to Section C(1)(c) of the *Standing Order Relating to Utilization of Magistrate Judge*, entered November 3, 2011, Avaya Inc. certifies that this Objections does not raise new legal or factual arguments.


Dated:  June 24, 2013

**DLA PIPER LLP (US)**

  */s/ Denise S. Kraft*
Denise S. Kraft (I.D. No. 2778)
Laura D. Hatcher (I.D. No. 5098)
Aleine Porterfield (I.D. No. 5053)
919 N. Market Street, Suite 1500
Wilmington, DE  19801
Telephone:   (302) 468-57
Facsimile:    (302) 778-7917
denise.kraft@dlapiper.com
laura.hatcher@dlapiper.com
aleine.porterfield@dlapiper.com

*Attorneys for Plaintiff Avaya Inc.*