# CLARK HILL

December 16, 2015

Hon. Mary Pat Thynge
Chief Magistrate Judge, District Court of Delaware
J. Caleb Boggs Federal Building
844 N. King Street; Unit 8, Room 2124
Wilmington, DE 19801-3555

Clark Hill
824 N. Market Street
Suite 710
Wilmington, DE 19801
T 302.250.4750
F 302.421.9439

clarkhill.com

Re:   *Avaya v. SNMP Research Int'l, Inc., et al.*, Case No. 12-191-RGA-MPT

Dear Judge Thynge:

Pursuant to Your Honor's instruction, SNMP Research, Inc. and SNMP Research International, Inc. (collectively "SNMP Research") respectfully submit this letter in advance of the parties' January 5th hearing.

**Issue 1:** The Protective Order entered in this action provides that a party may designate requested and produced Source Code as Highly Confidential Source Code, and restrict its review to certain identified individuals. (D.I. 124; D.I. 173). The protection of truly competitive interests is obviously behind allowing a party to restrict who may view its Source Code under the Protective Order and the law, but this right, under the law, is balanced against a litigant's right to review relevant information. The Protective Order, therefore, specifically gives a party the right to challenge confidentiality designations, including Source Code designations, and gives the Court authority to revise any designation. (D.I. 124 at ¶ H.1.–H.4.). The Protective Order, and Third Circuit law, places the burden on the Producing Party to prove the necessity for the designation. (D.I. 124 at ¶ H.1.).

Pursuant to the Protective Order, SNMP Research inspected Avaya's Source Code at Avaya's counsel's office.[1] During this inspection, SNMP Research harvested *its own* Source Code[2] from Avaya products. (Cross Aff. at ¶ 12, Ex. A). That harvested Source Code was then produced by Avaya to SNMP Research under the terms of the Protective Order, and designated as Highly Confidential – Source Code. (*Id.* at ¶ 16). It is undisputed the Source Code identified on Exhibit 1, 2, and 3 of the Cross Affidavit is entirely SNMP Research's Source Code. (*Id.* at ¶¶ 10, 11, 17).

---

[1] Under the stipulated Protective Order, the parties agreed that neither party is required to produce Source Code unless requested by the opposing party and, if requested, the Source Code would be made available at counsel's office of the producing party. (D.I. 173 at ¶ G.3.a.). SNMP Research travelled to Boston to review Source Code.

[2] SNMP Research also harvested, and Avaya produced, "generated Source Code" that does contain some of Avaya's Source Code. SNMP Research is not asking for any modification with respect to this Source Code and is not challenging that designation.

SNMP Research, therefore, requests that this Court modify the designation by Avaya and rule that SNMP Research principal, Dr. Case, and employee David Reid, may view the Source Code identified in Exhibits 1-3 of Ms. Cross's attached Affidavit without violating the Protective Order. Both Dr. Case and David Reid are designated fact and expert witnesses in this action, and the present impact of this designation is that neither can view SNMP Research's own Source Code. There is no legitimate business or competitive reason Avaya has to prevent them from doing so with respect to this specific Source Code, and no legitimate reason to allow this designation to stand under these circumstances. It is Avaya's burden to prove that disclosure will cause a "clearly defined and serious injury to [it.]." *Glenmede Trust Co. v Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994). In the meet and confer, Avaya did not dispute that the Source Code is SNMP Research's Source Code. They also did not identify any business or competitive reason for the designation. Nor could they, as Avaya has stipulated that Dr. Case *can see Avaya* Source Code contained in Avaya's expert reports, (Sept. 16, 2015 Stern Email to Wood, Ex. B), and Dr. Shamos's report contains such Source Code, which shows that Avaya does not fear Dr. Case seeing even *its* Source Code. (Shamos Report, Ex. C at ¶¶ 163-228).

Instead, Avaya would not re-designate those documents solely because it did not want Dr. Case or Mr. Reid to use those documents to do the same code comparison that Ms. Cross performed, and claimed SNMP Research is supposedly attempting an end run around Your Honor's Order regarding Ms. Cross's rebuttal report. Avaya's response is not "good cause" as defined by the Third Circuit, not a matter before this Court, and is wrong in any event.

The sole issue before Your Honor is whether Avaya has met its burden of showing "good cause" (i.e., "a clearly defined and serious injury") under Third Circuit law. The answer is no. The issue of what Dr. Case or Mr. Reid can do with those documents in this litigation is an evidentiary issue for Judge Andrews at the appropriate time.

In addition, this is not an "end run" around anything. Your Honor only ruled that Ms. Cross's comparison was not proper rebuttal testimony. Your Honor made no ruling, and it was not before Your Honor, whether such a comparison could be performed by some other witness properly qualified to do so. In its Initial Disclosures, SNMP Research identified both Dr. Case and Mr. Reid as fact witnesses, who had knowledge of, among other topics, SNMP Research software. (SNMP Research Rule 26 Initial Disclosures, Ex. D at 1-2). Both were also disclosed as expert witnesses (SNMP Research Rule 26 Expert Disclosures, Ex. E at 3-4), who, as employees of SNMP Research, were not required to submit expert reports. *See* Fed. R. Civ. P. 26 advisory committee's note (2010); *see also Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004); *Graco, Inc. v. PMC Global, Inc.*, No. 08-1304, 2011 WL 666056, at *7 (D.N.J. 2011); *In re TW, Inc.*, No. 03-10785 MFW, 2005 WL 2671531, at *1-2 (Bankr. D. Del. Oct. 14, 2005). While Dr. Case and Mr. Reid can therefore view these documents either as lay or expert witnesses, every case we can find on the subject says specifically that such a comparison can be lay testimony. *See, e.g., Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 110 (2d Cir. 2002); *Point 4 Data Corp. v. Tri-state Surgical Supply Equip., Ltd.*, No. 11-CV-00726 CBA RLM, 2013 WL 5502852, at *3 (E.D.N.Y. Oct. 1, 2013). Thus, while there is no legitimate reason to prohibit Dr. Case or Mr. Reid from making this comparison, it is Judge Andrews who will ultimately decide the issue. That issue is not before Your Honor and is wholly irrelevant.

Avaya has no basis, legal or otherwise, to raise this concern. Avaya has admitted that the products from which this Source Code was harvested contain SNMP Research's Source Code. They have not only admitted this in sworn interrogatory responses, and corporate representative depositions, but recently, at the close of discovery, by sending SNMP Research checks north of a million dollars for purported royalties on some of the very products, e.g., Communication Manager, from which the SNMP Research software was harvested. (Case Decl. at ¶¶ 4-5, Ex. F).

Finally, while again not relevant to this application, Avaya has no right to complain. The parties entered a Protective Order that says neither is required to produce Source Code unless requested, and the receiving party must review Source Code at the office of the producing party's counsel. (D.I. 173 at ¶¶ G.2., G.3.a.). In response to a document request, SNMP Research advised that its Source Code was available for inspection pursuant to the Protective Order. (Wood Dec. 7, 2015 Aff. at ¶ 3, D.I. 311-2). Avaya never chose to inspect it. Avaya cannot therefore complain that it does not have the means to compare the harvested Source Code with SNMP Research's copyrighted Source Code, or complain about properly qualified witnesses doing what is allowable under the law.[3]

The bottom line: SNMP Research provided Avaya SNMP Research's Source Code in the normal course of business. SNMP Research has now identified that same Source Code in certain Avaya products, and Avaya produced it back. There is no possible competitive or business justification for Avaya to designate SNMP Research's own Source Code in a way that would prevent Dr. Case or Mr. Reid from seeing it. Avaya cannot meet its burden of showing a clearly defined and serious injury. That is the sole issue before Your Honor, and SNMP Research respectfully requests that this Court set aside Avaya's designation, which leads to this absurd and never intended result.[4]

**Issue 2:** As previously discussed with the Court during the November 23 hearing, SNMP Research seeks to have this Court strike the portion of Mr. Green's report in which he relies on his conversation with Lorraine Belanger, and which directly contradicts the testimony of Avaya's 30(b)(6) witness Eileen Brennan. (Green Report, Ex. H at 56). The Court previously reserved judgment on this issue until after Mr. Green's deposition. (*See* Nov. 23, 2015 Hearing Tr., D.I. 308, at 32:3-17, Ex. I). Mr. Green's deposition was held on November 24, 2015.

---

[3] It also only took Ms. Cross's team 276 *minutes* to actually do a similar comparison, and a total of 15 hours to review and complete the entire project. (Cross Dec. 6, 2015 Aff. at ¶9, D.I. 311-3; Purdy Dec. 7, 2015 Aff. at ¶10, D.I. 313-3). Additionally, Avaya is in possession of the comparisons between SNMP Research Source Code and the Source Code SNMP Research filed with the copyright office.

[4] During the meet and confer, Avaya also asserted that the Court addressed this issue when the Protective Order was being negotiated. Avaya is incorrect. During a January 24, 2014 telephonic hearing with the Court, the parties discussed whether Dr. Case would be permitted to *inspect Avaya's Source Code* to determine whether SNMP Research's Source Code was present. (Jan. 24, 2014 Hearing Tr. at 19:21-38:16, Ex. G). The Court ultimately ruled that because SNMP Research and Avaya were customers of one another, it would not permit Dr. Case to inspect *Avaya's* Source Code to determine whether SNMP Research's Source Code was present. (*Id.* at 34:16-35:7, 37:3-38:5). The Court never addressed whether Dr. Case could review already harvested Source Code, produced by Avaya in Bates stamped documents, which only contain SNMP Research's Source Code.

To refresh the Court's memory, Ms. Brennan testified about the research and development ("R&D") expense allocations Avaya prepared and produced as part of its financial production. Ms. Brennan testified that it was not possible to identify what R&D expenses are "specifically and directly attributable to the products involved in this case that are alleged to be infringing." (Brennan Dep. 359:16-361:16, Dec.10, 2014, Ex. J). She also testified that it was not possible from the documents produced by Avaya to determine R&D by product, that she spoke with Ms. Belanger before her deposition, that Avaya has looked at the issue, and it is just not possible to determine the R&D specifically for Communication Manager or any of the other allegedly infringing products in this action. (Napper Aff. at ¶ 10, Ex. K; Brennan Dep. 351:13-363:24, Dec. 10, 2014, Ex. J). Ms. Brennan also explained that Avaya maintains its records by "profit centers," which include numerous products, (Brennan Dep. 233:16-235:9, 235:18-237:3, 242:2-15, Aug. 7, 2014, Ex. L; Brennan Dep. 466:14-468:3, Dec. 10, 2014, Ex. J), so looking at the "Communication Manager" profit center, for example, would not yield the specific R&D for Communication Manager the product.

Despite this very clear testimony, Mr. Green stated in his report that, after speaking with Ms. Belanger, "it is . . . appropriate to deduct the directly related R&D expenses in order to calculate the profits attributable to specific products." (Green Report, Ex. H at 56). This opinion is in direct conflict with Ms. Brennan's testimony, and the only basis cited for his conclusion is his conversations with Ms. Belanger. He cites no documents within the text of his report on this topic. (*Id.*). Although Mr. Green testified at his deposition that his conclusion is supported by the documents referenced in Exhibits I through I-4 of his report (Green Report, Ex. H at I-I4; Green Dep. 144:10-190:6, 253:5-256:16, Nov. 24, 2015, Ex. M), an analysis of those documents confirms Mr. Green's claim is unsupported. AVAYA00425450 contains no evidence that Avaya allocated R&D expenses by profit center, let alone by product. (Napper Aff. at ¶ 10, Ex. K). Those documents were also produced prior to and referenced during Ms. Brennan's deposition in which she testified that it is not possible to attribute R&D and other costs to specific products. (Brennan Dep. 359:16-361:16, Dec. 10, 2014, Ex. J). The other document, AVAYA00466427, only contains summary-level R&D expenses for profit centers, including profit centers associated with Communication Manager. (Napper Aff. at ¶ 14, Ex. K). However, there is nothing within AVAYA00466427 that indicates the R&D expenses contained within the file are "directly related to the upkeep and production of the Accused Products" as Mr. Green claims in his report. (Green Report, Ex. H at 56; Napper Aff. at ¶ 14, Ex. K). This document was also not produced until September 19, 2015, following the close of fact discovery, and at about the same time that Mr. Green's report was submitted. (Wood Decl. at ¶ 2, Ex. N).

Ultimately, nothing within either AVAYA00425450 or AVAYA00466427 supports Mr. Green's deposition testimony that the documents themselves support the conclusions he reaches in his expert report. Instead, this conclusion is only supported by his conversations with Ms. Belanger. It is clear SNMP Research has been misled and misdirected by Avaya on this issue. SNMP Research relied on specific testimony from Avaya's Rule 30(b)(6) witness, and has now been blindsided by contradictory information obtained through "conversations" with a previously undisclosed witness. Accordingly, and in accordance with Your Honor's comments at the hearing, SNMP Research respectfully requests that this Court strike Ms. Belanger as a witness and strike the above quoted portion from page 56 of Mr. Green's report, as well as the related conclusions.

Respectfully submitted,

CLARK HILL PLC

*/s/ Edward J. Kosmowski*
Edward J. Kosmowski (No. 3849)
T 302.250.4750
F 302.421.9439
Email: ekosmowski@clarkhill.com

cc: Counsel to Avaya (via electronic filing and email)