# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVAYA INC., <br><br> Plaintiff, <br><br> v. <br><br> SNMP RESEARCH INTERNATIONAL, INC., et al. <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § C.A. No. 12-191- RGA-MPT <br> § <br> § <br> § <br> § <br> § |

## DECLARATION OF DR. JEFFREY D. CASE IN SUPPORT OF SNMP RESEARCH'S DECEMBER 16, 2015 LETTER TO MAGISTRATE JUDGE THYNGE

I, Dr. Jeffrey Case, declare and state as follows:

1. I am over 18 years of age and make the following statements based on my personal knowledge.

2. I am founder of and presently serve as the President and Chief Technology Officer of SNMP Research, Inc. I also serve as a consultant to SNMP Research International, Inc.

3. SNMP Research, Inc. and SNMP Research International, Inc., are in the business of creating, licensing, and supporting software products for Internet management and security.

4. Attached hereto as Exhibit 1 is a true and correct copy of a May 14, 2015 letter from Gary Barnett accompanying a check to SNMP Research International, Inc. in the amount of $1,084,181.

5. Attached hereto as Exhibit 2 is a true and correct copy of a December 11, 2015 letter from Avaya counsel Ben Stern, in which he clarified that one of the products for which Avaya purported to pay royalties owed under its license agreement with SNMP Research International, Inc., is the Avaya product Communication Manager.

I declare under penalty of perjury, 28 U.S.C. § 1746, and the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge and belief. Executed this 15th day of December, 2015 at Knoxville, Tennessee.

*[Signature: Jeffrey D. Case]*
Dr. Jeffrey Case

# EXHIBIT 1



Gary E. Barnett
Senior Vice President and
General Manager
Engagement Solutions
Avaya Inc.
4655 Great America Parkway
Santa Clara, CA 95054
408.562.3890 voice
garybarnett@avaya.com

**Sent via Federal Express**

May 14, 2015

Dr. Jeffrey Case, Chief Executive Officer
SNMP Research, Inc.
3001 Kimberlin Heights Road
Knoxville, TN 37920-9716

Re:   Agreement between SNMP Research International, Inc. ("SNMPRI") and Avaya Inc. ("Avaya") dated March 14, 1995, with Amendments (the "Agreement")

Dear Dr. Case,

As you know, Avaya and SNMPRI have been engaged in protracted litigation over the amount of money that the parties claim is owed under their Agreement. We recently reached out to you to try to resolve our differences, but I understand that SNMPRI is not interested in talking at this time. It had been our hope that the parties could have resolved their differences long ago. Unfortunately, that has not proven to be the case.

As a result of our impasse, it has been some time since Avaya has made any payments under the Agreement. Avaya would prefer to reach a global resolution to the dispute, and remains open to doing that. In the absence of such an agreement, however, Avaya no longer wishes to wait for a global resolution before paying SNMPRI. Accordingly, enclosed please find a check in the amount of $1,084,181. This payment reflects royalties calculated based on Avaya's interpretation of the contract that are owed through December 31, 2014, with interest owed through March 31, 2015.

While we believe that this payment represents the full amount owed through these dates, we understand that SNMPRI feels otherwise. This payment therefore is made without any conditions, and specifically Avaya does not ask nor expect SNMPRI to waive any of its rights or claims in connection with the present dispute. Likewise, this payment is being made without waiving any of Avaya's rights, claims or defenses.

If you have any questions or would like to discuss this matter further, please do not hesitate to let me know.

Sincerely yours,

Gary E. Barnett
Senior Vice President and General Manager
Engagement Solutions
Avaya Inc.

# SNMP Research Incorporated

<u>Sent via UPS</u>

September 14, 2015

Mr. Gary E. Barnett
Senior Vice President and General Manager
Engagement Solutions
Avaya Inc.
4655 Great America Parkway
Santa Clara, CA  95054

     Re:    Your letters dated May 14, 2015 and August 19, 2015 with enclosed checks

Dear Mr. Barnett:

I have received and reviewed four letters from you, each dated May 14, 2015, and three checks, two dated May 13, 2015, and one dated May 7, 2015. I am also in receipt of a subsequent letter dated August 19, 2015, and a check dated August 17, 2015. Please accept this single letter as SNMP Research, Inc., and SNMP Research International, Inc.'s ("SNMP Research"), response to your five letters.

As explained below, we do not agree with the statements contained in your letters, and do not agree that these purported payments are ether appropriate or represent the amounts that are owed. We believe, with all due respect, that the sending of these letters, and checks, after years of litigation that Avaya initiated, and at the close of discovery, to be nothing more than a transparent litigation tactic. I am, therefore also returning, with this letter, the four checks for the many reasons discussed below.

First, I must initially respond to your statement in your letters that "it had been [Avaya's] hope that the parties could have resolved their differences long ago," and your claim that "we recently reached out to you to try to resolve our differences, but [you] understand that SNMPRI is not interested in talking at this time." Without belaboring the matter in this letter, as you know full well, before this litigation began, after SNMP Research notified Avaya of at least six breaches of our agreement, and even though Avaya did not cure any of those breaches, I offered you temporary non-royalty bearing licenses to give Avaya the time it needed to fully investigate what it owed SNMP Research, and the products that contain SNMP Research software, and, once that investigation was concluded, pay SNMP Research what Avaya owed. Avaya not only rejected that proposal, but responded by suing SNMP Research. As a result, we have had to spend the next three years forcing Avaya to come clean about all of the products that used SNMP Research software without a license, including inspecting Avaya's source code. We, in fact, continued discovering new Avaya products that contain SNMP Research software as late as the spring of this year. We therefore reject the notion that Avaya has been trying to resolve this matter with us for

Dr. Jeff Case to Mr. Gary Barnett
September 14, 2015
Page 2

a long time. Avaya has, to the contrary, tried to make this litigation as expensive for us as possible, so that we would be forced to give up, and has been trying to prevent us from getting to the truth. We have been and remain willing to discuss settlement offers with Avaya. So, the notion that we have been unwilling to talk is also not correct.

Along these same lines, you claim in your letters that the checks "represent[s] the full amount owed" and are, according to your letters, "calculated based on Avaya's interpretation of the [parties'] contract." We disagree. The checks sent not only do not accurately reflect the amount of royalties owed for the many products that contain SNMP Research software without a license (as you know from SNMP Research's expert reports that you now possess), but also do not:
(1) compensate for the many millions of dollars of fees and costs Avaya has caused SNMP Research to incur to protect its rights and defend against the lawsuit Avaya filed (which fees and costs SNMP Research is entitled to recover under its license agreement), or
(2) reflect the profits Avaya has enjoyed by using SNMP Research software without a license, which profits Avaya has no right to keep.

Furthermore, as you know fully well, (a) the March 3, 2010 Letter of Accession Agreement, as amended (the so-called "Blue License" Accession Agreement), expired by its terms on February 15, 2011, and (b) Avaya's rights to use and redistribute our software under the March 14, 1995 license agreement, as amended (the so-called "Red License"), were terminated on February 1, 2012. **Avaya did not have any right to distribute products containing SNMP Research software after that time.** We therefore reject the notion that Avaya can purport to pay royalties at rates that are not in place in order to cure its willful infringement. Even if the licenses were in place, which they are not, the checks in your letters have also not been accompanied by any royalty reporting statement, required under the Blue license, or any explanation of how the royalties were calculated.

In sum, and again with all due respect, we view your letters and the enclosure of these checks, after more than three years of this litigation, on the eve of the close of discovery, and after years of false denials, and ever changing stories, as a self-serving litigation tactic, which does not nearly compensate SNMP Research for the damage caused by Avaya's behavior.

It is my understanding that, should SNMP accept these payments by cashing the checks, Avaya could argue that SNMP has granted Avaya a constructive license, which is not something we can allow to happen.

For the foregoing reasons, we are returning to you the checks enclosed with your May 14, 2015 and August 19, 2015 letters.

Sincerely yours,

*Jeffrey D. Case*
Jeffrey D. Case, Ph.D.
Founder and CTO

Enclosures: Checks (4)

# EXHIBIT 2

# Holland & Knight

10 St. James Avenue | Boston, MA 02116 | T 617.523.2700 | F 617.523.6850
Holland & Knight LLP | www.hklaw.com

Benjamin M. Stern
(617) 305-2022
benjamin.stern@hklaw.com

December 11, 2015

*Via E-mail (JLW@emlaw.com)*

John L. Wood
Shareholder
Egerton McAfee Armistead & Davis, P.C.
Egerton, McAfee, Armistead & Davis, P.C.
1400 Riverview Tower
900 S. Gay Street
Knoxville, TN 37902

        Re:    *Avaya, Inc. v. SNMP Research International, Inc.*, et al., Civ. A. No. 12-191-RGA-MPT (D. Del.)

Dear John:

I am writing in response to your email sent on the evening of December 6, 2015, in which you requested a clarification of a document (AVAYA00464377-79) that I attached to a June 29, 2015 letter. We have checked with Avaya and can confirm that the line item in AVAYA00464377-79 titled "CM Systems wo/G700" refers to the Communications Manager product(s) at issue in this case that were *not* sold with the G700 product. Communications Manager product(s) sold with the G700 product were excluded because any such royalties were paid under the G700 designation.

I trust that this clarifies the spreadsheet, but please let me know if you have any additional questions.

Very truly yours,

Benjamin M. Stern

John L. Wood
December 11, 2015
Page 2

cc:    All counsel of record

#38027717_v1

John L. Wood
December 11, 2015
Page 2

cc:    All counsel of record

#38027717_v1